**In re RO–AN FOOD ENTERPRISES LTD., Debtor.**

**Nos. CV 84–0766, CV 84–1173.**

United States District Court,
E.D. New York.

June 20, 1984.

Bert K. Leffert, Mineola, N.Y., for trustee/appellant.

Seymour Frank & Associates, New York City, for respondent Steinway Holding Corp., Siegel, Sommers & Schwartz by Leonard D. Schwartz, New York City, of counsel.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

The Trustee for the bankrupt estate of Ro-An Food Enterprises, Ltd. (Trustee) brings this appeal from a January 31, 1984 Decision and Order of the Honorable Boris Radoyevich of the United States Bankruptcy Court of the Eastern District of New York. Steinway Holding Corp., (Steinway or landlord) the landlord of certain property at issue here opposes the Trustee. In his order Judge Radoyevich granted the landlord's motion to vacate an automatic stay in effect pursuant to 11 U.S.C. Section 362 and held that by failing to act within the specified time, the Trustee had rejected the unexpired lease debtor held on certain premises in Queens County. 11 U.S.C. Section 365(d)(1).

On August 31, 1983, debtor Ro-An Food Enterprises, Ltd. (Ro-An or debtor) filed a petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court. Such a filing constitutes an order for relief. 11 U.S.C. Section 301. The order for relief had two effects. First, it began the sixty day period wherein the Trustee of the bankrupt estate must act to assume or reject any executory con-

tract or unexpired lease of the debtor. 11 U.S.C. Section 365(a). Second, the order for relief put into effect an automatic stay pursuant to 11 U.S.C. Section 362 on proceedings to terminate the lease instituted by the landlord Steinway in Queens County Civil Court.

At issue here is a lease to certain premises at 25–33 and 25–35 Broadway in Long Island City, New York. The premises have been improved with fixtures and equipment for a grocery store or supermarket. It is generally acknowledged that the unexpired lease to the premises is the only asset in the debtor's estate and the proceeds from the sale of the lease are the creditors' only prospect for any payment from the estate.

From the very outset of the bankruptcy proceedings Steinway insisted that the lease had been terminated and was invalid as a result of an unapproved assignment to Ro-An. Consequently, on September 15, 1983 Steinway brought an order to show cause before Judge Radoyevich to vacate the Section 362 automatic stay on proceedings in Civil Court to gain possession of the premises. Meanwhile, the Trustee was apparently elected, although the creditors later questioned the permanence and validity of the election pointing out that the required Section 341 meeting had never been held (Oct. 4, 1983 Tr. at 4). 11 U.S.C. Sections 341, 702(b). More importantly, the Trustee was impeded by the incarceration of Angelo Tomao, the debtor's principal (Oct. 4, 1983 Tr. at 4). This had prevented, among other things, the Trustee's required examination of the debtor at the Section 341 meeting. 11 U.S.C. Section 343. Thus, at the October 4, 1983 hearing on the landlord's order to show cause the Trustee requested and received an adjournment to gain familiarity with the estate. The transcript of that first hearing clearly shows that the Trustee was aware of the value of

the unexpired lease to the estate and already had two interested purchasers for it. The landlord raised no objection to the adjournment[1] (Oct. 4, 1983 Tr. at 5).

The issue the landlord first sought to address by the order to show cause was the validity of the lease. The lease to the Broadway premises had originally been between Pell-Shell, Inc. (Pell-Shell) and the predecessor landlord Roseben Knitting Mills, Inc. (Roseben). Pell-Shell was a related corporation to Ro-An and filed a related Chapter 7 petition.[2] The lease was assigned by Pell-Shell to Ro-An in November 1982. Roseben conveyed title in the Broadway premises to Steinway in January 1983.[3] Steinway contends that the assignment was not in accordance with the terms of the lease and rendered the lease invalid and not in force.

At the next hearing before the Bankruptcy Court on November 17, 1983 the Trustee stated that there was a $150,000.00 offer for the lease and the sale hearing was scheduled for December 13, 1983 before the same court. A hearing on Steinway's order to show cause to vacate the Section 362 stay was then set for December 8, 1983. It would appear that the December 8th hearing was never held, for at the December 13th hearing on the application for purchase of the lease by a party named Weinberg, the question of the lease's validity and the request to vacate the stay were as yet unresolved. At this juncture landlord Steinway raised the Section 365 assumption question, pointing out that sixty days had long since elapsed and contending that the Trustee had not acted to assume the lease and so must be deemed to have rejected it. 11 U.S.C. Section 365(d)(1). The court abandoned the application of the lease purchaser and heard argument from the Trustee, creditors, and landlord on the

---

1. The first adjournment date of November 8, 1983 was changed by the Bankruptcy Court on its own initiative to November 17, 1983.

2. In fact, the incarcerated Angelo Tomao is the sole shareholder of both corporations. His brother Ottavio Tomao executed Ro-An's Chapter 7 petition. According to the Trustee's Affir-

mation in Opposition of November 16, 1983, the New York District Attorney was resisting efforts to release Angelo Tomao for the bankruptcy proceeding.

3. It is unclear from the record whether Roseben was an alter ego to Pell-Shell and Ro-An.

assumption issue. The court then called for memoranda of law from both sides. Subsequently, two more hearings were held in January 1984, the parties seemingly confused over which motion was being addressed by the court. At the end of January Judge Radoyevich decided the order to show cause to vacate the automatic stay by determining the Trustee had by inaction rejected the lease. The underlying issue of the validity of the unexpired lease was not decided.

The issue on appeal to this Court is whether the Trustee can be held to have rejected or assumed the unexpired lease for the Broadway premises under the facts presented.

### I.

■ The Bankruptcy Code provides that the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor. 11 U.S.C. Section 365(a). It specifies that under Chapter 7,

> if the trustee does not assume or reject an executory contract or unexpired lease of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.

11 U.S.C. Section 365(d)(1). As Judge Radoyevich pointed out in his Decision of January 31, 1984, the Bankruptcy Code does not specify any particular manner in which a lease is assumed or rejected, except to say that it is subject to court approval. Nor do the Bankruptcy Rules provide greater guidance. Rule 6006(a) of the Bankruptcy Rules declares that a proceeding "to assume, reject or assign" an unexpired lease is governed by Rule 9014, and subsection (c) of Rule 6006 provides for hearing and notice. Rule 9014 sets out motion and notice requirements. As Judge Radoyevich observed, it is unclear whether assumption is by motion and hearing before the court or the Trustee may assume the lease by less formal acts and then gain court approval. Judge Radoyevich did not decide that question, but held that the Trustee had not acted to assume the lease with a clearly manifested unequivocal intent.

■ This Court concludes that the Trustee can assume the unexpired lease by action less formal than the Rule 9014 provision for a motion for court approval. In construing the nearly identical language of Section 70(b) of the earlier Bankruptcy Act, Courts of Appeals for two circuits held that informal acts of assumption, including oral notice, are sufficient. *Brown v. Presbytarian Ministers Fund*, 484 F.2d 998, 1007 (3rd Cir.1973); *Nostromo v. Fahrenkrog*, 388 F.2d 82 (8th Cir.1968). This approach to the assumption provision has been specifically adopted under the similar provision of the present Bankruptcy Code. In re *Avery Arnold Construction, Inc.*, 11 B.R. 34 (Bankr.S.D.Fla.1981). Moreover, while less than formal acts of assumption do not obviate the need for court approval under the former Bankruptcy Act and Bankruptcy Code, they do serve to give notice and preclude deeming the lease rejected by inaction under 11 U.S.C. Section 365(d)(1).

### II.

Judge Radoyevich found that there had been only equivocal acts and expressions of uncertainty as to the value and validity of the lease by the Trustee in proceedings before the Bankruptcy Court. Therefore, he reasoned, there was no basis for the contention of assumption of the lease by act or oral notice. Were the circumstances of this case different this Court would agree with Judge Radoyevich's conclusion. The sum of the odd twists and turns in the facts and proceedings in this case, however, make Judge Radoyevich's result more than a little troubling. This Court is particularly struck by the way matters rapidly devolved from unclear to confused over the course of five hearings, beginning with the first appearance of the parties on October 4, 1983 on the motion to vacate the Section 362 stay. In particular, the Court notes that the Trustee's ability to manage Ro-An's affairs was severely impeded by the

imprisonment and concomitant inaccessibility of the debtor's sole shareholder and principal. This was highlighted at the November 17, 1983 hearing where the validity of the lease assignment to Ro-An was argued and a creditor stepped forward with information about title and lease transfers (Nov. 17, 1983 Tr. at 11–12).[4] Again, the appointment of the Trustee as permanent trustee was called into question (Oct. 4, 1983 Tr. at 4 and Nov. 17, 1983 Tr. at 8). Finally, there are the confused hearings where the motion to vacate the Section 362 stay, the motion to approve sale or assignment of the lease, the motion to deem the lease rejected, and the various adjournments became a tangle and no party is certain what issue is being argued.

Contrary to the assessment of Judge Radoyevich, this Court does not find the Trustee uncertain as to whether she will assume the lease. Rather, the Court finds the circumstances of the bankrupt estate and the validity of the lease uncertain and the proceedings before the Bankruptcy Court confused. What is clear is that before the Trustee could familiarize herself with the debtor's position the landlord speedily moved in with an order to show cause that ultimately sought to have the lease declared null. The Trustee, then, was left not knowing whether there was a lease to assume. As Judge Radoyevich observed during the December 13, 1983 hearing, there was no use in holding a hearing on approving a purchaser for the lease if it was uncertain there was a lease (Dec. 13, 1983 Tr. 8). For the same reason there was little use in the Trustee moving for formal court approval of assumption of the lease pursuant to 11 U.S.C. Section 365(a). The Bankruptcy Court did not immediately resolve the issue of the validity of the lease and only after the sixty days had elapsed did the landlord raise the assumption question. It would seem that rather than unraveling the resulting knot, Judge Radoyevich chose to cut it. The Bankruptcy Court is correct that mere opposition to landlord's

motion to vacate the stay is a weak basis for finding intent to assume the lease. This, however, ignores the totality of the circumstances in this case. Most importantly, it ignores the Trustee's efforts to get court approval for a purchaser of the lease.

■ While the Court finds the unfortunate constellation of factors in this case a less than salutary subject for application of the law, it is constrained to hold that the Trustee cannot be deemed to have rejected the lease. The peculiar progress of this case and the incarceration of the debtor's principal successfully hampered and diverted the Trustee from formally assuming the lease within the sixty-day period. And while the Court does not hold up her handling of affairs as a model, the Trustee certainly pursued the interests of the estate and creditors by seeking out and offering for court approval in a timely manner a purchaser for the unexpired lease. The Trustee may not have acted to formally assume the lease, but she did not neglect the issue either. This is by no means the preferred mode of assuming the lease, and the Court limits its holding to the particular facts before it. Nevertheless, in conjunction with the unusual circumstances in this case, that is, the unavailable debtor's principal, litigation of the threshold question of the lease's validity, and several long adjournments countenanced by the landlord and the Bankruptcy Court, there is compelling reason to find that the sixty-day limit of Section 365 has been in fact extended by the Bankruptcy Court or otherwise waived. The Court does not come to this conclusion facilely, but with consideration of the equities involved and the role of the landlord and the court in forming the issues and directing the course of the proceedings.

### III.

Accordingly, the Court holds that under these particular facts the Trustee is not

---

4. In her November 16, 1983 Affirmation in Opposition to the motion to vacate, the Trustee declared that she was presenting facts on infor-

mation and belief gleaned from creditor's attorneys and debtor's records.

deemed to have rejected the lease. The vacature of the automatic stay under 11 U.S.C. Section 362 is reversed and the stay reinstated. This matter is remanded to the Bankruptcy Court to decide whether the stay should be vacated on the original question of the termination of lease by improper assignment. The Trustee has thirty days from the filing of this Memorandum and Order in which to formally assume the lease, whether or not the motion to vacate the stay is decided within that time, unless the Bankruptcy Court specifically extends the thirty-day time limit.

SO ORDERED.