In re BY–RITE DISTRIBUTING, INC., a Utah corporation, Debtor.

BY–RITE DISTRIBUTING, INC., a Utah corporation, Appellant,

v.

Wayne and Leva BRIERLEY, Panos Deuel Investments, Tom and John Kershisnik, and Ogden City Corporation, Appellees.

Bankruptcy No. 84A–03050.

No. NC–85–0055J.

United States District Court, D. Utah, N.D.

Nov. 26, 1985.

Vernon L. Hopkinson, Salt Lake City, Utah, for appellant.

Bryce D. Panzer, Salt Lake City, Utah, for appellee.

## MEMORANDUM OPINION AND ORDER

JENKINS, Chief Judge.

On November 6, 1985, the court heard oral arguments on this appeal from the bankruptcy court's order denying the appellant's motion to assume certain real property leases. Vernon L. Hopkinson appeared for the appellant, By-Rite Distributing, Inc., and Bryce D. Panzer appeared for the appellee Panos Deuel Investments. At that time the court reversed the bankruptcy court's order but reserved the right to set forth its reasons in this memorandum opinion because of the importance of the issue involved.

### I. Background

This case presents a rather pedestrian question of statutory interpretation but one with potentially serious consequences, not only for bankruptcy debtors and their creditors, but also for already crowded court calendars.

The debtor-appellant, By-Rite Distributing, Inc., operated and leased convenience stores and service stations. In August 1976 it leased two lots of real property in Wyoming, one for $700 a month and the other for $750 a month.[1] The appellees in this action are the lessors under those leases. By-Rite improved the property by building service stations on the lots, which were appraised in 1983 at more than $200,000 each. It then subleased each lot for $2,150 a month. By-Rite's leases with the appellees were due to expire in 1986, but By-Rite had the option to extend the leases for two additional ten-year terms. Under the terms of the leases, the improvements reverted to the lessors if the leases were rejected.

On November 8, 1984, By-Rite filed a voluntary petition for reorganization under chapter 11 of the Bankruptcy Code (hereinafter the Code), 11 U.S.C.A. §§ 1101–1174 (1979 & Supp.1985).[2] Sixty days later, on January 7, 1985, it filed a motion, as debtor in possession, to assume the unexpired leases pursuant to section 365 of the Code. That section provides that "the trustee [in bankruptcy], subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C.A. § 365(a) (Supp.1985).[3]

By-Rite's motion to assume the leases was duly noticed, and no objections were filed. The motion came on for hearing before the Honorable John H. Allen on January 29, 1985, more than sixty days after By-Rite filed its petition for reorganization. None of the lessors appeared. The bankruptcy court, sua sponte, dismissed the plaintiff's motion to assume the leases on the grounds that it was barred by the time limitations of section 365 of the Code. *In re By-Rite Distrib., Inc.,* 47 B.R. 660 (Bankr.D. Utah 1985). The court construed that section to mean that a debtor in possession must obtain court approval of his decision to assume a nonresidential real property lease within sixty days of filing his petition for relief under chapter 11, unless the court extends the time for cause. By-Rite claims that the bankruptcy court erred in its construction of that section. This court agrees and therefore reverses the bankruptcy court's order of dismissal.

---

1. Originally, five leases were involved in this case. However, three of the five have been renegotiated and are not at issue in this appeal.

2. Since the bankruptcy court's ruling, the case has been converted to a chapter 7 proceeding, and a trustee has been appointed.

3. Section 1107 of the Code gives a debtor in possession essentially all of the powers of a trustee. Any reference in this opinion to a chapter 11 trustee also includes a debtor in possession, such as By-Rite.

## II. Analysis

Section 365(d)(4) of the Code, which was added by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (hereinafter the 1984 amendments), provides that

> in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

The "date of the order for relief" is the date on which the debtor files his petition for relief, *see* 11 U.S.C.A. § 301, in this case, November 8, 1984. It is undisputed that By-Rite filed its motion to assume the leases "within 60 days after the date of the order for relief," namely, on the sixtieth day. It is equally clear that the bankruptcy court did not fix any "additional time" for assumption of the leases. The question, then, is whether the trustee's filing of a motion to assume within the sixty-day period satisfies the time requirements of section 365(d)(4) or whether court approval of the trustee's motion to assume must also occur within the sixty days. The bankruptcy court concluded that merely filing a motion to assume within the sixty-day period was insufficient. Because By-Rite's motion was not heard until after the sixty

days had elapsed, the bankruptcy court held that By-Rite was deemed to have rejected the leases. It felt constrained to reach that result by both the language and legislative history of section 365.

Section 365 does not expressly require the bankruptcy court to rule within the sixty-day period on the trustee's decision to assume a lease. It only says that the *trustee* must "assume or reject" an unexpired lease within sixty days of the commencement of the case. 11 U.S.C.A. § 365(d)(4). The bankruptcy court reasoned, however, that court approval is an essential element of assumption under section 365(a) and therefore must also occur within the sixty-day time limit of section 365(d)(4).[4]

Section 365 contemplates two distinct actions, one by the trustee (or debtor in possession) and one by the court. The trustee assumes or rejects, and the court approves. The Code does not specify how the trustee is to assume or reject a lease, but the trustee's action is different from the court's. Such is the import of section 365(a), which says that "the trustee, subject to the court's approval, may assume or reject any ... unexpired lease of the debtor."

 The court concludes that the trustee assumes or rejects the lease within the meaning of section 365(d)(4) when he makes up his mind to do so and communicates his decision in an appropriate manner, such as by filing a motion to assume.[5] The

---

**4.** The appellant disputes the premise that court approval of assumption is always required under the Code, citing *United States v. Midwest Serv. & Supply Co. (In re Midwest Serv. & Supply Co.),* 44 B.R. 262 (D.Utah 1983). For purposes of this appeal, however, this court will assume that it is.

**5.** Cases under the old Bankruptcy Act allowed a trustee in some circumstances to assume an unexpired lease or an executory contract by implication, that is, by conduct short of filing a motion to assume. *See, e.g., Vilas & Sommer, Inc. v. Mahony (In re Steelship Corp.),* 576 F.2d 128, 132–33 (8th Cir.1978) (assumption implied from the trustee's knowledge that the other party to the contract was performing in reliance on the contract); *Nostromo, Inc. v. Fahrenkrog,* 388

F.2d 82, 84–85 (8th Cir.1968) (oral notice to the other party of the trustee's intent to assume was sufficient); *In re McCormick Lumber & Mfg. Corp.,* 144 F.Supp. 804, 806 (D.Or.1956) (the trustee's retained possession of machinery sold under a conditional sales contract constituted assumption of the contract). Courts split over whether a trustee can still assume a lease or contract by implication under the Code. *Compare In re Ro-An Food Enters. Ltd.,* 41 B.R. 416, 418 (E.D.N.Y.1984) (recognizing informal assumptions) *with Sealy Uptown v. Kelly Lyn Franchise Co. (In re Kelly Lyn Franchise Co.),* 26 B.R. 441, 444 (Bankr.M.D.Tenn.) (rejecting the contention that assumption of an unexpired lease can be by implication), *approved,* 33 B.R. 112 (M.D.Tenn.1983). This court does not reach the question of what actions short of filing a

assumption may become effective only after the court approves it. It is, in effect, subject to defeasance by the court. But the trustee's act of assuming the lease is complete for purposes of section 365(d)(4) before the trustee ever obtains court approval. *Cf. Cranmer v. Fidelity & Casualty Co.,* 18 So.2d 220, 222 (La.Ct.App. 1944) (statute making any adjustment of workers' compensation payments "subject to the approval of the court" does not make court approval a condition precedent to valid adjustment but merely means that the adjustment is subject to review by the court to prevent injustice). And according to the statute, it is only the trustee's action that must occur within sixty days. *Accord In re Bon Ton Restaurant & Pastry Shop, Inc.,* 52 B.R. 850 (Bankr.N.D.Ill.1985). The express language of the statute imposes no such deadline for the court's action.

Nevertheless, the bankruptcy court concluded from the statutory framework and the legislative history that Congress intended the entire process, including court approval, to occur within sixty days of the commencement of the case. It reasoned that Congress intended by the 1984 amendments to provide landlords of insolvent commercial tenants with maximum protection, and requiring court approval within the sixty-day period best effected that intent.

Declaring legislative intent is always a precarious undertaking at best. More often than not, Congress's "intent" is "a riddle wrapped in a mystery inside an enigma," to borrow Churchill's phrase. But to the extent this court can determine Congress's intent in enacting section 365(d)(4), it concludes that Congress never intended to place any time limit on judicial approval of the trustee's decision to assume an unexpired lease.

. Under the Code as it existed before the 1984 amendments, a chapter 11 debtor in possession had until confirmation of the reorganization plan to elect to assume or reject an unexpired lease. 11 U.S.C. § 365(d)(2) (1982) (amended 1984).[6] The debtor was not required to pay rent for the period between filing his petition and assuming (or rejecting) the lease, but the estate was liable for the reasonable value of the use and occupancy of the premises during that time. *See, e.g., Philadelphia Co. v. Dipple,* 312 U.S. 168, 174, 61 S.Ct. 538, 541, 85 L.Ed. 651 (1941); *Palmer v. Palmer,* 104 F.2d 161, 163 (2d Cir.), *cert. denied,* 308 U.S. 590, 60 S.Ct. 120, 84 L.Ed. 494 (1939). However, the lessor's claim for this amount was treated as an administrative claim, *see, e.g., Hall v. Perry (In re Cochise College Park, Inc.),* 703 F.2d 1339, 1354–55 (9th Cir.1983), which meant that the lessor generally was not paid until later, when other administrative claims were satisfied.

In a chapter 7 case, on the other hand, "if the trustee [did] not assume or reject an . . . unexpired lease of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such . . . lease [was] deemed rejected." 11 U.S.C. § 365(d)(1) (amended 1984).

This disparate treatment of chapter 7 and chapter 11 cases led to inequitable results. A trustee in a chapter 7 case had to decide within sixty days after the bankruptcy petition was filed whether or not to assume the lease. Thus, within a reasonable time the landlord of a chapter 7 debtor knew whether or not he still had a tenant and could start collecting rent again. A chapter 11 trustee, on the other hand, could wait almost indefinitely—till confirmation of the plan—to decide to assume the lease; in the meantime, the landlord was left in limbo. If the debtor had vacated the premises, the landlord could not get a new tenant because the trustee might later decide

motion to assume, if any, constitute an assumption of the lease, since By-Rite unequivocally expressed its decision to assume by filing a motion to assume.

**6.** On request of a party to the lease, the court could shorten the time for making the election. *Id.*

to assume the unexpired lease.[7] On the other hand, if a chapter 11 debtor remained in possession of the premises before assumption, he was not liable for rent and, in the case of shopping center tenants, for common area charges. The landlord could eventually recover the reasonable value of the possession from the estate, but generally not until the plan was confirmed and administrative claimants were paid. Meanwhile, the landlord was forced to provide the use of his property, utilities, security and other services without current payment. *See* 130 Cong.Rec. S8891, S8894–95 (daily ed. June 29, 1984) (statement of Sen. Hatch), *reprinted in* 1984 U.S.Code Cong. & Ad.News, 590, 598–99.

Congress recognized these problems and sought to remedy them by adding section 365(d)(4), with its sixty-day time limit for *all* unexpired leases of nonresidential real property, not just those involving a chapter 7 debtor. But there is no indication that Congress meant that section to prescribe the time in which the *court* had to act. Rather, the legislative history shows that Congress's only concern was with the *trustee*, as evidenced by the following comments of Senator Hatch:

> Although in a chapter 7 case the bankruptcy code presently requires that the *trustee* decide whether to assume or reject an unexpired lease within 60 days after the bankruptcy petition is filed, there is no deadline *for this decision* in a chapter 11 case. Because of the unprecedented number of bankruptcy cases and the consequent delays in the bankruptcy courts, tenant space has been vacated for extended periods of time before the bankruptcy court forced the *trustee* to decide whether to assume or reject the lease. . . .

[Section 365(d)(4)] would lessen the problems caused by extended vacancies and partial operation of tenant space *by requiring that the trustee decide* whether to assume or reject the nonresidential real property lease *within 60 days* after the order for relief in a case under any chapter.

*Id.* (emphasis added). Thus, Congress's intent was simply to force the trustee to make up his mind within sixty days, *not* to dictate court calendars. It was to put chapter 11 cases on an equal footing with chapter 7 cases.

This intent is evidenced by Congress's choice of words. By choosing language virtually identical to old section 365(d)(1), *supra,* which governed the assumption of leases in chapter 7 cases, Congress must have intended chapter 11 cases to be subject to the same time restrictions that chapter 7 cases had always been subject to. And it was settled law that the sixty-day limit of section 365(d)(1) applied only to the trustee's decision to assume, not to the court's approval of that decision. *See, e.g., In re Ro-An Food Enters. Ltd.,* 41 B.R. 416, 418 (E.D.N.Y.1984) (assumption by informal acts of the trustee within 60 days precludes rejection by inaction under § 365(d)(1)); *In re Price Chopper Supermarkets, Inc.,* 19 B.R. 462, 466 (Bankr.S.D. Cal.1982) ("as long as the Chapter 7 trustee has acted within the sixty-day limitation imposed by Section 365(d)(1), then the court may act outside that time"); *In re Avery Arnold Constr., Inc.,* 11 Bankr. 34, 35 (Bankr.S.D.Fla.1981) ("Although the court's approval is mandatory, the 'assumption' may precede 'approval' and, therefore, there is no requirement that the approval occur within the 60 day period").

The bankruptcy court's interpretation of section 365(d)(4) would actually defeat the

---

7. The situation was especially serious in shopping centers, where a vacancy in one store hurt all the other tenants because of the reduced customer traffic in the center as a whole. In fact, the amendments to § 365 were meant primarily "to remedy serious problems caused shopping centers and their solvent tenants by the administration of the bankruptcy code" and were referred to as the "shopping center bankruptcy amendments." 130 Cong.Rec. S8891, S8894 (daily ed. June 29, 1984) (statement of Sen. Hatch), *reprinted in* 1984 U.S.Code Cong. & Ad.News 576, 590, 598. By-Rite's leases apparently did not involve shopping centers.

stated legislative intent by giving the trustee *less* than the full sixty days to make up his mind. If the trustee had to get court approval within the sixty days, he would have to decide whether or not to assume the lease and file his motion for assumption much earlier, to allow time for the required notice, the filing of any objections and the required hearing. *See* Bankruptcy Rule 6006. In complex cases especially such a requirement would unduly tax the trustee, who must also calculate assets and debts, determine creditors and file schedules soon after the filing of the petition. The result would likely be that trustees would routinely file for extensions of the sixty-day period, leading to the very evil that section 365(d)(4) was meant to cure—costly delay.

In light of the legislative history, the bankruptcy court's desire to protect lessors is understandable. But there is simply no indication that Congress intended to protect lessors from *all* problems incident to a tenant's filing a petition in bankruptcy. All creditors—including landlords—should expect some loss, delay or inconvenience. Other provisions of the Code minimize the adverse effects to lessors that any delay in obtaining court approval of an assumption might cause them. Section 365(d)(3), for example, which was also added by the 1984 amendments, requires the trustee to perform all the debtor's obligations under the lease that arise between the order for relief and assumption. The trustee must perform these duties at the time required in the lease. For cause the court may extend the time for performance of obligations due within the first sixty days after the order for relief, but it may not extend the time beyond that sixty-day period. So the lessor must be paid by the end of the sixty days, regardless of the trustee's decision. Moreover, the trustee may not assume a lease unless, at the time of assumption, he cures any default and compensates the lessor for "any actual pecuniary loss" resulting from such default (or provides "adequate assur-

ance" that he will do so) and provides adequate assurance of future performance under the lease. 11 U.S.C.A. § 365(b)(1). These protections for lessors answer one of Congress's concerns in imposing the sixty-day limit of section 365(d)(4) and obviate in part the need for hasty judicial confirmation of the trustee's decision to assume the lease.

The inequities of making assumption turn on the vagaries of congested court calendars are illustrated by the facts of this case. The two leases in question were deemed rejected despite the fact that the trustee made up his mind and communicated his decision to the court and the landlords within the required time. The result is a large windfall to the lessors, who receive the value of the improvements (over $200,000 each) some twenty-one years before they otherwise would. Not only are the lessors greatly favored at the expense of other creditors, but the debtor's prospects for reorganization are severely crippled, since the estate is deprived of one of its prime assets—two highly favorable leases.

Because the bankruptcy court erred in requiring By-Rite to obtain court approval of its decision to assume the leases within sixty days of filing its petition, the bankruptcy court's decision is REVERSED, and this matter is REMANDED to that court for further proceedings consistent with this opinion.

IT IS SO ORDERED.