**In re LONEPINE CORPORATION, a Colorado corporation, EIN 84–0674940, Debtor.**

**Bankruptcy No. 94–11133 MSK. M.C. No. JC–02.**

United States Bankruptcy Court, D. Colorado.

June 20, 1994.

Revised July 13, 1995.

Leo Weiss, U.S. Trustee's Office, U.S. Dept. of Justice, Denver, CO, for U.S. Trustee.

Jon B. Clarke, Clarke & Waggener Law Firm, Englewood, CO, for LonePine Corp.

William R. Rapson, Robinson, Waters, O'Dorisio and Rapson, P.C., Denver, CO, for R.H. Pierce Mfg. Co.

James L. Brown, Morrison, CO, for PDKD, Inc.

Joan Burleson and Lee M. Kutner, Rubner & Kutner, P.C., Denver, CO, for Unsecured Creditors' Committee of Can Am Industries, Inc.

Peter J. Lucas, Doherty, Rumble & Butler, P.C., Denver, CO, for Guerdon Homes.

Joseph G. Rosania, Denver, CO, for Can Am Industries, Inc.

## MEMORANDUM OPINION
## AND ORDER

MARCIA S. KRIEGER, Bankruptcy Judge.

THIS MATTER came on for hearing on June 7, 1994 on the Motion to Assume Unexpired Commercial Lease (Motion) filed by LonePine Corporation (LonePine) and Objections of the Landlord, R.H. Pierce Manufacturing Co. (Pierce), and the prospective purchaser of Pierce's assets, PDKD, Inc. (PDKD). The Motion was supported by the Unsecured Creditors' Committee of Can Am Industries, Inc. (Can Am).

Appearances were made by Leo Weiss on behalf of the U.S. Trustee's Office, Jon B. Clark on behalf of LonePine, William R. Rapson on behalf of Pierce, James L. Brown on behalf of PDKD, and Joan Burleson and Lee Kutner on behalf of the Can Am Creditors' Committee. Also entering appearances were Peter J. Lucas on behalf of Guerdon Homes, a prospective buyer of the assets of LonePine and Can Am, and Joseph G. Rosania as counsel for Can Am.

The Motion is one puzzle piece from the jigsaw Chapter 11 bankruptcies of LonePine and Can Am. LonePine is a parent corporation owning stock in several subsidiary businesses, including Fort Lupton Canning, Inc. In turn, Fort Lupton Canning, Inc. owns 90 percent of the stock in Can Am. LonePine's bankruptcy case was filed to preserve its leasehold interest subject to a lease dated May 1, 1991 between Pierce and LonePine (Lease). However, before and after the bankruptcy filing Can Am has enjoyed the occupancy and beneficial use of the leased premises.

Pierce and PDKD oppose LonePine's assumption of the Lease because they contend that:

1. The Lease may not be assumed because it was terminated prior to the bankruptcy filing.

2. The Lease may not be assumed because it was rejected as a matter of law pursuant to 11 U.S.C. § 365(d)(4).

3. If the Lease is assumable, LonePine cannot cure or provide adequate assurance of future performance.

At the time of the hearing on this Motion, LonePine and Can Am had received an offer for the purchase of assets of both estates premised upon the assumption of the Lease. Because the issue of LonePine's ability to cure and provide adequate assurance of future performance under the Lease is integrally related to the proposed sale, that issue will be considered in conjunction with a motion to approve the proposed sale. This Memorandum Opinion and Order addresses only the two dispositive issues identified by counsel at the June 7, 1994 hearing. The dispositive issues are:

1. Was the Lease terminated prior to the bankruptcy filing? and

2. Was the Lease rejected by operation of 11 U.S.C. § 365(d)(4)?

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2)(A), (M) and (O) and 1334. Having received evidence, heard argument and reviewed the legal authority submitted by the parties, the Court makes the following Findings of Fact and Conclusions of Law.

### I. FINDINGS OF FACT

Pursuant to the Lease, Pierce is the landlord and LonePine the tenant of certain commercial real property located in Fort Lupton, Colorado. During the course of the Lease but without a written sublease, LonePine allowed Can Am to occupy and use the leased premises. Can Am performed for LonePine under the Lease including making all Lease payments.

On January 1 and February 1, 1994, Can Am failed to tender the Lease payments for LonePine. Pierce sent three notices concerning such failure to pay. The first notice dated January 26, 1994 came from Pierce's Oregon counsel. It was addressed to Del Fast (Fast), President of LonePine; it notified Fast that LonePine had failed to make the January 1, 1994 rent payment and demanded that the missed payment be cured by January 31, 1994. Pierce's second notice, dated February 4, 1994, came from its Denver attorney, William Rapson. It notified Fast that LonePine had failed to pay the rent

due February 1, 1994 and demanded that the missed payment be cured by February 9, 1994. Finally, by letter dated February 7, 1994 addressed to Fast and marked "via hand delivery", Rapson advised Fast that due to LonePine's failure to timely cure the missed January payment, the Lease was terminated.

After receiving the first two notices, Fast contacted LonePine's lawyer and was referred to bankruptcy counsel with whom he met on February 7 and February 8, 1994. In an effort to preserve its leasehold interest, LonePine filed a voluntary Chapter 11 petition on February 8, 1994. Can Am followed by filing its Chapter 11 petition on February 9, 1994. Fast testified that because he was engaged in meetings with bankruptcy counsel on both February 7 and 8, he was not in Ft. Lupton and never received the February 7, 1994 "termination letter".

Following both bankruptcy filings, Can Am remained in possession of the leased property. Pierce never sought relief from stay to evict Can Am. Instead, in a letter to Fast dated March 2, 1994, Pierce acknowledges receipt and allocation of funds to the March 1, 1994 rent payment and reserves its "rights under the existing Lease". Further, in a March 3, 1994 letter, Pierce urges LonePine to cure its obligations to a local utility company in order to avoid a "further breach by LonePine of its Lease with Pierce Corporation".

LonePine filed this Motion to assume its Lease with Pierce on April 5, 1994, fifty-six (56) days after filing its bankruptcy petition. LonePine did not request any extension of time to assume or reject the Lease.

## II. ANALYSIS AND CONCLUSIONS OF LAW

### A. Was the Lease Terminated Prior to the Bankruptcy Filing?

■ Pierce and PDKD argue that the Lease was terminated by the "termination letter" of February 7, 1994. Because the termination occurred prior to LonePine's bankruptcy filing on February 8, 1994, Pierce argues that the Lease is not now assumable pursuant to 11 U.S.C. § 365(c)(1).

LonePine and its supporters respond that the "termination letter" of February 7, 1994 did not cause the termination of the Lease for a host of reasons. They argue, first, that termination could not have occurred because the conditions precedent to termination were not satisfied. Second, they argue that any termination was ineffective because it did not comply with applicable Colorado statutory requirements set forth in C.R.S. § 13–40–101, *et seq.* and because the "termination letter" was never personally delivered to Fast. Finally, LonePine argues that even if the "termination letter" was effective, Pierce's conduct since the bankruptcy filing is either a waiver of termination or Pierce is estopped from asserting that the Lease was terminated due to its behavior since the bankruptcy filings.

After an extensive review of the Lease, Colorado law and the correspondence between the parties, I conclude that although Pierce was entitled to terminate the Lease, the February 7, 1994 "termination letter" was ineffective. It was ineffective because notice was not given according to the terms of the Lease prior to the filing of LonePine's bankruptcy petition. This conclusion is bolstered by Pierce's post-petition conduct.

The applicable provisions of the Lease follow:

16. *Default.* The following shall be events of default:

16.1 Failure of Tenant to pay any rent or other charge within five days after receiving notice from Landlord that the rent is unpaid. Landlord shall not be required to give Tenant written notice of Tenant's failure to pay rent more than twice during any calendar year.

16.2 Failure of Tenant to comply with any other term or condition or fulfill any obligations of the lease (other than the payment of rent or other charges) with which Tenant has failed to comply within 20 days after written notice by landlord specifying the nature of the term, condition or obligation with reasonable particularity. If the failure to comply is of such a nature that it cannot be completely remedied within the 20–day period,

this provision shall be complied with if Tenant begins correction of the default within the 20–day period and thereafter proceeds with reasonable diligence and in good faith to effect the remedy as soon as practicable.

17. *Remedies on Default.*

17.1 In the event of a default, the lease may be terminated at the option of Landlord by notice in writing to Tenant, unless a default is cured by Tenant, which termination shall occur at the time specified in the notice. If the lease is not terminated by election of Landlord or otherwise, Landlord shall be entitled to recover damages from Tenant for the default. If the lease is terminated, Tenant's liability to Landlord for damages shall survive such termination, and the Landlord may reenter, take possession of the Premises and remove any persons or property by legal action or by self-help with the use of reasonable force and without liability for damages.

17.2 In the event of termination on default, Landlord shall be entitled to recover immediately, without waiting until the due date of any future rent or until the date fixed for expiration of the lease term, for the following amounts as damages:

. . . .

23. *Notices.*

Any notice required to be given hereunder or any notice required to be given by law shall be in writing and may be given by personal delivery or by registered or certified mail. Such notice shall be given to the party at the address set forth above, or such other address as may be specified from time to time.

Although these provisions are not a model of clarity, they can be interpreted in a consistent fashion. There are two types of default under the Lease, monetary and non-monetary. Paragraphs 16.1 and 16.2 govern the contents of the notice and the cure provisions related to each type of default. Paragraph 17 governs the effect of default. Paragraph 23 requires that all notices by Pierce be written.

Paragraph 16.1 regulates the notice and cure provisions related to monetary defaults. The Tenant has five (5) days after receiving notice within which to cure non-payment. The Landlord is only required to give two notices of non-payment within any calendar year. Accordingly, in connection with non-payment of rent, the tenant is afforded a maximum of two 5–day cure periods within a calendar year.

Paragraph 16.2 regulates the notice and cure provisions for the Tenant's failure "to comply with any other term or condition or fulfill any obligation of the lease (other than the payment of rent or other charges)". The notice must contain certain specifics regarding the noncompliance. The cure period for such noncompliance is twenty (20) days. There is no limitation on the Landlord's duty to provide notice in these instances. Thus, in each instance of non-monetary default the Tenant is afforded a 20–day cure period.

Paragraph 17 governs termination of the Lease due to default arising under either paragraph 16.1 or 16.2. The first sentence of paragraph 17.1 provides that "in the event of a default, the lease may be terminated at the option of Landlord by notice in writing to Tenant, unless a default is cured by Tenant, which termination shall occur at the time specified in the notice". Read in conjunction with paragraph 16, I interpret this language to mean that unless LonePine cured any failure to perform within either the 5–day cure period for a monetary default or the 20–day cure period for a non-monetary default, Pierce could terminate the Lease. If Pierce opted to terminate the Lease, it was required to provide written notice to LonePine specifying a termination date. Pierce could give either two independent notices (one for failure to perform followed by a termination notice if no cure occurred) or one notice addressing non-performance and termination in the event of failure to cure. In the instant case, Pierce provided two separate notices. The effectiveness of any notice is determined by its compliance with paragraph 23.

Although LonePine failed to timely tender the January and February rent and Pierce gave notice of non-payment in both instances,

LonePine's failure to pay the January rent is the critical event. On January 26, 1994 Pierce sent LonePine a notice of nonpayment via telefax and certified mail. The notice informed LonePine of its failure to pay the $7,000 rent due on January 1, 1994 and demanded payment on or before January 31, 1994.

Paragraph 23 of the Lease specifies that any notice given under the terms of the Lease "be given by personal delivery or by registered or certified mail". Presumably, Pierce was attempting to use the telefax as personal delivery. However, I need not resolve whether the telefax is the same as personal delivery because the notice was also sent by certified mail.

If one relies upon the certified nature of the letter, it was received and acknowledged on January 31, 1994, thus the 5–day cure period extended through February 5, 1994. LonePine failed to pay its January rent by February 5, 1994. By operation of paragraph 16.1, LonePine was then in default. The Lease does not provide for any further cure period, Pierce's only remaining obligation was to send notice of termination, including a specific termination date. Thus, the February 7, 1994 "termination letter" was a written notice after all conditions precedent to termination were satisfied.

Paragraph 23 of the Lease provides that all notices "be given by personal delivery, registered or certified mail". Therefore, any notice was effective only if given in the prescribed manner. The February 7, 1994 "termination letter" was addressed to Fast and marked "via hand delivery". It therefore appears that Pierce elected to give its notice of termination by *personal delivery* to Fast, as agent for LonePine, rather than by certified or registered mail. However, there is no evidence that the notice was ever delivered. The only evidence on such issue is Fast's unrefuted testimony that the February 7, 1994 "termination letter" was never delivered to him before or after the bankruptcy filing. Because the February 7, 1994 "termination

letter" was never given according to the Lease terms, it did not effectively terminate the lease.[1]

Pierce's post-petition behavior and admissions confirm that it did not believe that the Lease was terminated prior to the bankruptcy filing. Pierce has never sought relief from stay to remove Can Am or LonePine from possession of the property. Moreover, its post-petition correspondence with Can Am and LonePine and its contract for sale of the property to PDKD are inconsistent with an understanding that the Lease was terminated before the bankruptcy filing.

By letter dated March 2, 1994 addressed to Fast as Vice President of Can Am, Pierce acknowledged the receipt of "$7,141.02 via wire transfer" and indicated that it would "be applied to the March lease payment and insurance reimbursement". Pierce further stated that this conduct was not a waiver of "Pierce's rights under the existing lease agreement". Allocation of funds to a specific month's rent is inconsistent with Pierce's right upon termination to recover reasonable rent from the date of default through the term of the Lease. Similarly, if the Lease had been terminated there would be no "existing" Lease agreement.

On March 3, 1994 Pierce again wrote to Fast, as an agent of LonePine, demanding payment of certain utility charges. Pierce wrote, "please be advised that Pierce will regard any disconnection of power, and its attendant potential threat to the safety and security of the leased premises, as further breach by LonePine of its lease with Pierce Corporation". If the Lease had been terminated there could be no "further breach" of the Lease.

Finally, since the Chapter 11 cases for LonePine and Can Am were filed, Pierce has entered into a sale agreement and first addendum to a sale agreement with PDKD for the sale of the leased property. Both written contacts are executed by Pierce and PDKD. Both acknowledge the existence of the Lease, provide for PDKD's payment of rent due

---

1. The Court is not persuaded by the argument that the termination did not comply with Colorado's Forcible Entry and Detainer Statute, C.R.S. § 13–40–101, *et seq.* which is applicable to ac-

tions to terminate occupancy of premises, not the termination of a lease. *Francam Building Corporation v. Fail,* 646 P.2d 345 (Colo.1982) (en banc).

under the Lease, and anticipate its ultimate assignment from Pierce to PDKD. Had there been an effective termination of the Lease there would be no Lease rights for Pierce to assign to PDKD.

For these reasons, I conclude that the Lease was not terminated prior to Lone-Pine's bankruptcy filing on February 8, 1994.

## B. Was the Lease Rejected by Operation of 11 U.S.C. § 365(d)(4)?

■ Pierce and PDKD contend that in order for LonePine to assume the Lease pursuant to 11 U.S.C. § 365, LonePine was required to obtain an order approving assumption within 60 days following the filing of its Chapter 11 petition. Because no order approving assumption entered within the 60 days, Pierce contends that the Lease is deemed rejected pursuant to 11 U.S.C. § 365(d)(4). LonePine and the Can Am Unsecured Creditors' Committee respond that such interpretation of Section 365(d)(4) is the minority view and that the better reasoned interpretation of Section 365(d)(4) requires only that a trustee (or a debtor-in-possession) file a motion to assume an unexpired lease of nonresidential real property within the 60–day period following a bankruptcy filing. Both parties have submitted briefs citing many cases in which Section 365(d)(4) is interpreted.

Succinctly stated, the issue before this Court is whether a bankruptcy court may consider a timely filed motion to assume an unexpired lease after the 60–day period expires. The applicable statutory provision is Section 365(d)(4) which provides:

Notwithstanding paragraph (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

This is a question of first impression in this District. Although much as been written concerning the application and interpretation of Section 365(d)(4), most of the case authority cited by the parties is inapplicable. Most of the cases concern situations in which a trustee or debtor-in-possession files a timely motion for extension of time to assume or reject a lease but no ruling upon the motion occurs within the 60 days.[2] These opinions address whether a bankruptcy court can rule upon a motion for extension of time to assume an unexpired lease outside of the initial 60–day period. Although much of the policy and legislative history considered by such courts is of interest, the portion of Section 365(d)(4) interpreted In such cases is not applicable to the facts at bar.[3]

In this case, LonePine did not seek an extension of the 60–day period to assume or reject the Lease. It filed a motion to assume within the requisite period. The language of Section 365(d)(4) applicable to a timely filed motion to assume is:

If the **trustee does not assume or reject** an unexpired lease of nonresidential real property under which the debtor is

---

**2.** The following are cases in which courts have held that a lease is not deemed rejected simply by failure of a bankruptcy court to rule upon a motion for extension of time to assume a lease within 60 days of the bankruptcy filing. *In re Deane Communications, Inc.*, Case No. 93–F–1207, 1994 WL 840976, Slip Op. (D.Colo. Apr. 6, 1994); *In re Southwest Aircraft Services, Inc.*, 831 F.2d 848 (9th Cir.1987), *cert. denied*, 487 U.S. 1206, 108 S.Ct. 2848, 101 L.Ed.2d 885 (1988); *In re Advanced Electronics, Inc.*, 108 B.R. 53 (Bankr.M.D.Pa.1989); *In re Garrett Road Supermarket, Inc.*, 95 B.R. 902 (E.D.Pa.1989); *In re Unit Portions of Delaware, Inc.*, 53 B.R. 83 (Bankr.E.D.N.Y.1985). Cases in which the

courts have held an extension of time for assumption of an unexpired nonresidential real property lease may only be granted within the 60 days following the bankruptcy filing include: *In re Horwitz*, 167 B.R. 237 (Bankr.W.D.Okla.1994); *In re Duckwall–Alco Stores, Inc.*, 150 B.R. 965 (D.Kan.1993); *In re House of Deals of Broward, Inc.*, 67 B.R. 23 (Bankr.E.D.N.Y.1986).

**3.** When the issue concerns a motion for extension of time within which to assume or reject an unexpired lease, courts focus on the following language of Section 365(d)(4): "[O]r within such additional time as the court, for cause, within such 60–day period, fixes".

the lessee within 60 days after the date of the order for relief ... then such lease is deemed rejected. (Emphasis added.)

■■■ In considering this statute, this Court is mindful of the general principle of statutory construction that where a statute is plain and unambiguous, it is to be applied, not interpreted. A statute is open to judicial construction only where interpretation is required in order to give it meaning or where an ambiguity is present. 73 *AM.JUR.2D Statutes* § 194 (1974). In interpreting the Bankruptcy Code, the United States Supreme Court has repeatedly instructed courts to apply the Bankruptcy Code according to its plain language and to avoid unnecessary, retroactive speculation as to Congress' intent.[4]

The portion of Section 365(d)(4) critical to this matter is clear and unambiguous. Its clarity is reflected in the unanimity of reported decisions which hold that a lease is not deemed rejected if a bankruptcy court fails to rule upon a timely filed motion to assume after expiration of the initial 60-day period. *By–Rite Distributing Inc.,* 55 B.R. 740 (D.Utah 1985); *In re BDM Corp.,* 71 B.R. 142 (Bankr.N.D.Ill.1987); *In re Delta Paper Co., Inc.,* 74 B.R. 58 (Bankr.E.D.Tenn.1987); *In re Fosko Markets, Inc.,* 74 B.R. 384, 388 (Bankr.S.D.N.Y.1987); *In re Wedtech Corp.,* 72 B.R. 464, 467 (Bankr.S.D.N.Y.1987); *In re Re–Trac Corp.,* 59 B.R. 251 (Bankr.D.Minn. 1986); *In re Bon Ton Restaurant and Pastry Shop, Inc.,* 52 B.R. 850 (Bankr.N.D.Ill. 1985).

I adopt the careful analysis of the District Court of Utah In *In re By–Rite Distributing, Inc.,* 55 B.R. 740 (D.Utah 1985). In *By–Rite,* a Chapter 11 debtor-in-possession filed a motion to assume an unexpired lease pursuant to Section 365 of the Code 60 days after its bankruptcy filing. Although there were no objections, the bankruptcy court denied the motion holding that Section 365(d)(4) re-

quired not only filing but also court approval of the proposed assumption within the 60-day period. The District Court reversed following the simple rule that a statute means what it says and means only what it says. Judge Jenkins concluded that Section 365(d)(4) required a trustee (or debtor-in-possession) to assume or reject within the 60-day period; it imposed no obligation upon a court to take any action to approve an assumption within such period:

> Section 365(d)(4) contemplates two distinct actions, one by the trustee (or debtor-in-possession) and one by the court. The trustee assumes or rejects, and the court approves. The Code does not specify how the trustee is to assume or reject the lease, but the trustee's action is different from the Court's. Such is the import of Section 365(a) which says that "the trustee subject to this court's approval may assume or reject any ... unexpired lease of the debtor". *By–Rite,* 55 B.R. at 742.

Section 365(d)(4) contains no provision stating that a lease is rejected if a court fails to rule upon a timely motion to assume within 60 days. Although a decision by a trustee to assume a lease must be approved by a bankruptcy court, the express language of Section 365(d)(4) imposes no deadlines on court action. Had Congress intended a court to take action within the 60-day period, it could and would have said so. For example, 11 U.S.C. § 362(e) of the Code specifically provides that the automatic stay is terminated unless a court rules upon a motion for relief from stay within 30 days after a request or the time period is waived by the movant.

■■■ Section 365(a)(4) requires that within the first 60 days of a bankruptcy case, the trustee must make a decision whether to assume or reject an unexpired lease. If the decision is to reject the lease, no further

---

4. *See, e.g., Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992); *Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992); Effross, *Grammarian at the Gates: The Renquist Court's Evolving "Plain Meaning" Approach to Bankruptcy Jurisprudence,* 23 SETON HALL CONST.L.J. 1636 (1993). Justice Scalia cautions against judicial editing of congressional enactments when he says, "It is

generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another". *BFP v. Resolution Trust Corporation,* — U.S. —, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (quoting *Chicago v. Environmental Defense Fund,* — U.S. —, —, 114 S.Ct. 1588, 1593, 128 L.Ed.2d 302 (1994)).

action need be taken. If the decision is to assume the lease, the trustee must communicate this decision in an appropriate manner, such as by filing a motion to assume. *By–Rite*, 55 B.R. at 741.[5] The act of the trustee to assume the lease is complete for purposes of Section 365(d)(4) before the trustee ever obtains court approval. *By–Rite*, 55 B.R. at 743.

By filing its motion to assume the Lease within the first 60 days following its bankruptcy filing, LonePine complied with the requirements of Section 365(d)(4) in a timely fashion.

**IT IS THEREFORE ORDERED** that LonePine's Motion to Assume will be considered on its merits at the hearing currently set for June 29, 1994 at 1:15 p.m.

Dated this 13th day of July, 1995, *nunc pro tunc* June 20, 1994.[6]

**5.** There is much dispute as to whether an act other than the filing of a motion to assume satisfies this requirement. In this District, such issue was resolved In *In re Swiss Hot Dog Co.,* 72 B.R. 569 (D.Colo.1987), in which Judge Kane held that a debtor under Chapter 11 may not assume a lease under 11 U.S.C. § 365 solely by means of conduct. The debtor must file a motion requesting approval of assumption. Although Judge Kane did not consider the precise issue presented to this Court, by implication he endorsed the common practice that Chapter 11 debtors and trustees may file a motion to assume a lease within the 60–day period and obtain approval of the assumption after expiration of the 60–day period.

**6.** This opinion was revised to correct clerical inaccuracies pending publication. No substantive changes were made.