TIGR RESTAURANT, INC., Appellant,

v.

ROUSE S.I. SHOPPING CENTER, INC., Appellee.

No. CV 86–3763 (RJD).

United States District Court, E.D. New York.

Nov. 24, 1987.

Siegel, Sommers & Schwartz (Lawrence C. Gottlieb and Jay R. Indyke, of counsel), New York City, for debtor-appellant.

Paul, Weiss, Rifkind, Wharton & Garrison (Robert L. Laufer and Jeffrey B. Sklaroff, of counsel), New York City, for lessor-appellee.

## MEMORANDUM AND ORDER

DEARIE, District Judge.

This appeal from the Bankruptcy Court raises a novel question of interpretation of § 365(d)(4) of the Bankruptcy Code.

## I. FACTUAL BACKGROUND

The debtor-appellant in this case, Tigr Restaurant, Inc. ("Tigr"), operates a Ground Round restaurant in leased space in a shopping center owned by lessor-appellee Rouse, S.I. Shopping Center ("Rouse"). Tigr filed a voluntary petition under Chapter 11 of the bankruptcy code on May 20, 1986. It continues to occupy and operate its restaurant in the space leased from Rouse.

Tigr's lease, which has approximately seventeen more years to run, is the debtor's most, and perhaps only, valuable asset. Although Tigr had accumulated substantial arrears in rent payments pre-petition, since filing Tigr has paid rent. Tigr disputes its obligation to pay the arrears, and asserts that it can, if released from that obligation, assume the lease for the remaining term. Alternatively, Tigr asserts that it could sell the lease to any of several interested parties.

11 U.S.C. § 365(d)(4) ordinarily gives debtors 60 days, after an order for relief is issued, to decide whether to assume or reject commercial leases. On July 3, 1986, 44 days after filing its bankruptcy petition, Tigr requested an extension of time to decide whether it would assume or reject the lease.

The Bankruptcy Court, Judge Holland, granted Tigr a 90–day extension. Tigr subsequently filed suit in New York State Supreme Court, alleging that Rouse had violated certain restrictive covenants contained in the lease. A possible outcome of that action could be a judicial determination that Tigr is not required to pay its rent arrears. Claiming that the value of its lease to potential purchasers depended crucially on the resolution of the issues raised in the state lawsuit, Tigr moved the Bankruptcy Court for an additional extension of its time to decide whether to assume or reject the lease. This motion was made more than 60 days after the petition was filed but within the 90–day extension that had been granted by Judge Holland.

At the hearing on Tigr's motion, Judge Holland expressed sympathy for the substantive merits of Tigr's position: "[I]f I read 365 to give me authority to grand [sic] that extension, ... I would do it on the basis that it is my feeling that a lease which is the subject of a legal dispute ... is less marketable than a lease which is not the subject of a legal dispute." Transcript of Hearing, Oct. 14, 1986, at 35 (Ex. A to Record on Appeal). However, the Bankruptcy Judge ruled that § 365(d)(4) denied him the power to issue any extension of the time to decide, no matter how well justified, once sixty days had elapsed from the original grant of relief. Accordingly, Judge Holland denied Tigr's motion. This appeal followed.

## II. DISCUSSION

■ Section 365(d)(4) of the Bankruptcy Code provides:

Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

Bankruptcy Judge Holland refused Tigr's request for an extension because "[t]his Court is without authority pursuant to § 365(d)(4), once the 60–day period which begins on the filing of the petition runs, to grant such a further extension." Order, October 24, 1986, at 2 (Ex. B to Record on Appeal). This decision was consistent with the Bankruptcy Court's rulings in *In re Alba Press, Inc.*, 55 B.R. 127 (Bkrtcy.E.D. N.Y.1985), and *In re House of Deals of Broward, Inc.*, 67 B.R. 23 (Bkrtcy.E.D.N.Y. 1986), that "such 60–day period" clearly and unambiguously referred to the first 60 days after the filing of the order for relief [hereinafter "the initial sixty days"] and that the court was therefore powerless to grant any extensions of time on or after the sixty-first day.

"The assertion in a judicial opinion that a statute needs no interpretation because it is 'clear and unambiguous' is in reality evidence that the court has already considered and construed the act." 2A J. Singer, Sutherland Statutory Construction § 45.02. This court finds that § 365(d)(4) is *not so unambiguous* as the Bankruptcy Court believed, and, moreover, that the construction chosen by the Bankruptcy Court so frustrates the purposes of the Bankruptcy Code that it is untenable.

Section 365(d)(4) empowers the court to grant extensions of time during "such" 60–day period. "Such" *could* be read as referring only to the "60 days after the date of the order for relief." However, the court is also empowered to grant "such additional time" as it sees fit. In a case where the Court has actually granted "such additional time," "such 60–day period" could refer to sixty-day periods within the "such additional time."

■ This construction furthers the plain statutory purpose. Section 365(d)(4), part

of the "Shopping Center Bankruptcy Amendments of 1984," was enacted primarily to protect the owners of and other retailers in shopping centers where one of the tenants had filed for bankruptcy. As Senator Hatch, in the only Congressional commentary on the purpose of the Amendments, noted, debtors often left stores wholly or partially vacant for months while they held on to valuable leases without fully operating their businesses nor making a commitment to assume the lease obligations. 1984 U.S.Code Cong. & Ad.News 576, 598. As a result, both the lessor and other retailers suffered economic harm.

Section 365(d)(4) was designed to minimize those harms by forcing debtors to make prompt decisions regarding their commercial leases. *In re By–Rite Distributing, Inc.*, 55 B.R. 740, 742 (D.Utah 1985). The time during which stores could be left vacant and rent unpaid is limited. Some certainty is provided to lessors. Nonetheless, the statute provides flexibility to debtors who can show a need for a longer time to decide, thereby serving the rehabilitative goals of Chapter 11 as well as the general goal of the Code for equitable treatment of all creditors.

In light of the objectives and interests that Congress was attempting to balance, it makes sense to believe that the requirement that extensions be granted only "within such sixty-day period" was intended to protect lessors from retroactive grants of extended time. *In re Unit Portions of Delaware, Inc.*, 53 B.R. 83 (Bkrtcy.E.D.N.Y.1985); *In re Capellen*, 39 B.R. 40, 40 (Bkrtcy.S.D.Fla.1984) (statutory purpose was to prevent retroactive grants made on retroactive applications by debtors; on application made within initial sixty days, court could in appropriate case grant extension after initial sixty days). A debtor who permits the initial sixty days to lapse is deemed to reject the lease, and that rejection is final. The leasehold interest reverts to the lessor and the situation may not be altered after the fact.

Within the initial sixty days, however, the debtor can seek more time to decide. If an extension is granted and is then allowed to lapse, the lease should likewise be deemed rejected with finality. However, the only sensible reading of the statute is that if the debtor, within the extended time, moves for a further extension, the court may grant that extension if it finds good cause. It does not make sense to believe that Congress intended to prevent a court from granting this relief, so long as the court avoids the retroactive effect of granting an extension after a previously allotted time has run.

■ This Court's reading of the statute protects lessors adequately while furthering the purposes of the Bankruptcy Code as a whole, and should obtain even if it is at odds with the "literal" meaning of the statute, which the Bankruptcy Court attempted to follow. "[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575, 102 S.Ct. 3245, 3252, 73 L.Ed.2d 973 (1982) (Rehnquist, J.); *see also* 2A J. Singer, Sutherland Statutory Construction § 45.12. This is particularly true when construing bankruptcy statutes, which should be read in harmony with general equitable principles. *Securities and Exchange Commission v. United States Realty & Improvement Co.*, 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940); *see also In re Maidman*, 2 B.R. 569, 575 (Bkrtcy.S.D.N.Y. 1980) (Bankruptcy Act is remedial and should be accorded liberal interpretation), *aff'd*, 668 F.2d 682 (2d Cir.1982).

In the instant case, a rigid construction would be contrary to justice, to the general purposes of the Bankruptcy Code as a whole, and to specific provisions of the Code. First, there is no question that justice favors granting (or at least considering) Tigr's request for an extension. The merits of the request were noted by the Bankruptcy Court at the time the request was made. Rouse's repeated attempts to terminate Tigr's lease suggest that Rouse is trying to use Tigr's bankruptcy petition as an opportunity to secure a windfall to itself at the expense of Tigr and Tigr's

creditors.[1] The Bankruptcy Code is not intended to provide such windfalls to debtors' lessors. *In re Westview 74th Street Drug Corp.*, 59 B.R. 747 (Bkrtcy.S.D.N.Y. 1986).

In fact, Chapter 11 of the Bankruptcy Code is designed primarily to permit continuation of the debtor's business and rehabilitation of the debtor. *See, e.g.*, Collier on Bankruptcy ¶ 1100.01, at 1100–20 (L. King 15th ed. 1987). It is acknowledged that the Ground Round lease is Tigr's sole asset of appreciable value. If the lease is lost the debtor—which has until now managed to continue operating as a going concern—will almost certainly be forced into liquidation. The goal of encouraging reorganization and rehabilitation would be frustrated. At the same time, the countervailing purpose for which § 365(d)(4) was enacted—protecting shopping centers from vacant, non-rent-paying premises—would not be served, because Tigr has neither left its premises vacant nor failed to pay its current rent obligations. Such an evident frustration of Congressional intent should not be furthered by a narrow and literalistic statutory construction. *See* 2A J. Singer, *supra*, § 45.09; *see also Wesley v. Board of Educ.*, 403 S.W.2d 28 (Ky.1966) (statute which required a vote of "four" members

of school boards, which normally numbered five members, would be construed to require 80% of the members of boards that consisted of more than five members).

▮ Finally, § 365(d)(4) as construed by the Bankruptcy Court conflicts with § 105 of the Bankruptcy Code, which expressly grants Bankruptcy Courts the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Section 105 provides ample authority for the Bankruptcy Court to grant an additional extension to a debtor who needs time to decide whether to assume or reject a lease, so long as the lease has not already been deemed rejected by lapse of time. Absent a specific limitation in § 365(d)(4) on the § 105(a) authority (*compare* § 365(d)(4) *with* § 105(b)), this Court concludes that the time limits of § 365(d)(4) are intended to limit the actions of the debtor or trustee, but not those of the court. *In re Southwest Aircraft Services, Inc.*, 831 F.2d 848 (9th Cir.1987); *By–Rite, supra*, 55 B.R. at 743.[2]

This conclusion is consistent with most jurisprudence interpreting § 365(d)(4) and similar provisions. The Shopping Center Amendments suffer from "excessive rigidity ... perhaps resulting from a drafting oversight." Collier on Bankruptcy

1. There can be no doubt that Rouse has both recognized and sought to appropriate the value of Tigr's lease. For example, when the Bankruptcy Court denied Tigr's second extension request (the subject of this appeal), it also stayed the expiration of Tigr's time pending this appeal. The stay was conditioned on Tigr's continued "timely" payment of current rent obligations as they became due. Rouse sought to exploit this condition when Tigr's November 1986 rent was not paid by the first of the month, notwithstanding a long history of rent payments tendered and accepted several days after the first of each month. Judge Holland, finding that Tigr had indeed violated the timely payment condition, granted Rouse possession of the premises. By order dated December 12, 1986, this Court modified the timely payment condition to the extent necessary to permit Tigr to retain possession of the premises pending the present appeal.

2. Section 105(a) clearly grants authority beyond specific provisions of the Code. *See In re Baldwin–United Corp. Litig.*, 765 F.2d 343, 348 (2d Cir.1985) (§ 105(a) broadens Bankruptcy Court's powers to stay other proceedings beyond automatic stay provisions of § 362). This reasoning is not foreclosed by the footnote to *In re Gusam Restaurant Corp.*, 737 F.2d 274, 277 n. 3 (2d Cir.1984). In *Gusam*, the Court declined the appellee's invitation to uphold the Bankruptcy Judge's *sua sponte* conversion of a proceeding from Chapter 11 to Chapter 7, where § 1112(b) of the Code permits such a change only at the request of a party. The Circuit Court felt that the more specific provision of § 1112(b) controlled the general grant of power of § 105(a). However, the Court's analysis of the legislative history of § 1112(b) made it clear that Congress had considered and rejected granting the Bankruptcy Court the authority to make such conversions *sua sponte*. Thus, Congress had made clear by its actions, if not by the words of its enactment, that it had intended to limit the court's § 105(a) authority. The reasoning of *Gusam* might apply to § 365(d)(4) if, for example, a debtor urged a court to ignore the "for cause" requirement. In light of the legislative history of the section's *time limits*, however, this Court finds the *Gusam* footnote inapplicable to the case at bar.

¶ 365.03, at 365–31. Courts have found flexibility in this statute on a series of issues about which, literally read, the statute appears to be rigid.

The first such issue concerned the question of whether a lease had been "assumed" within sixty days as the statute requires. In several cases, the debtor moved to assume the lease within the initial sixty days but the motion could not be decided until after the sixtieth day. In virtually all cases, courts have held that, notwithstanding the statutory requirement that the lease be "assumed or rejected" within sixty days, it was sufficient for the debtor to seek permission to assume the lease within the sixty day period, regardless of when the assumption became final by court order. *In re Victoria Station, Inc.*, 69 B.R. 110 (Bkrtcy. 9th Cir.1986); *In re Aneiro*, 72 B.R. 424 (Bkrtcy.S.D.Cal. 1987); *In re Diamond Head Emporium, Inc.*, 69 B.R. 487 (Bkrtcy.D.Hawaii 1987); *In re Musikahn Corp.*, 57 B.R. 938 (Bkrtcy.E.D.N.Y.1986); *In re Re–Trac Corp.*, 59 B.R. 251 (Bkrtcy.D.Minn.1986); *In re Bon Ton Restaurant & Pastry Shop, Inc.*, 52 B.R. 850 (Bkrtcy.N.D.Ill.1985); *By–Rite, supra.*[3]

Similarly, courts have found flexibility in the requirement that orders granting extensions of time for the debtor to decide be issued within sixty days. The reality of court calendars does not necessarily permit a court to decide motions in just a few days. As a result, motions for extensions that were made within the sixty-day period were sometimes not decided until after the sixtieth day. If the court were to hold that the motion for an extension must be *decided*, and not simply filed, within the sixty days following the order for relief, debtors would have to move to assume very early in the sixty-day period. This would deprive them of the reasonable opportunity to exercise business judgment that the sixty-day limit was intended to provide—and even then, debtors would have to hold their breath, hoping that the court could reach a properly thoughtful opinion within the time allotted. Not surprisingly, courts facing this situation have held, contrary to the apparent literal meaning of § 365(d)(4), that so long as the motion is made within a reasonable time before the end of the sixty-day period, the extension may be granted by the court after the sixtieth day. *Southwest Aircraft, supra,* 831 F.2d 848, *rev'g* 66 B.R. 121 (9th Cir.BAP 1986); *In re Wedtech Corp.*, 72 B.R. 464 (Bkrtcy.S.D.N.Y.1987); *Musikahn, supra; Bon Ton, supra; Unit Portions, supra. Contra, In re Coastal Industries, Inc.*, 58 B.R. 48 (Bkrtcy.D.N.J.1986).

From there it is but a small logical leap to the instant situation, where the court grants an extension within the sixty day period and is then asked to grant a further extension while the first extension is still in effect. This situation arose under Section 365(d)(1) of the Code in *In re Telemark Management Co.*, 51 B.R. 623 (Bkrtcy.W. D.Wisc.1984). Section 365(d)(1) deals with assumption or rejection of executory contracts and leases in Chapter 7 cases. It contains time limits and extension provisions identical to those in § 365(d)(4). In *Telemark*, the court granted the trustee an additional 56 days (beyond the initial sixty days) in which to decide whether to assume or reject certain contracts. The order extending time was entered 56 days after the original order for relief.

Four days before the trustee's extension would have run out, he filed a lawsuit materially affecting the same contracts. The trustee moved for a further extension of time to decide whether to assume or reject. The court granted the extension, but the trustee's adversary asked the Court to vacate the order because it was

**3.** It is worth noting that the two cases most squarely in opposition to this trend have both been overruled. *In re By–Rite Distributing, Inc.*, 47 B.R. 660 (Bkrtcy.D.Utah 1985), was reversed by *By–Rite, supra; In re House of Emeralds,* 57 B.R. 31 (Bkrtcy.D.Hawaii 1985), was overruled by *Diamond Head Emporium, supra.* Other cases sometimes cited for the proposition that court approval of a debtor's assumption of a lease must occur within the initial sixty days, *see In re Southwest Aircraft Servs., Inc.,* 66 B.R. 121 (Bkrtcy. 9th Cir.1986), in fact involved debtors whose *applications* to assume were not made within the initial sixty days. *Southwest Aircraft* was reversed by the Ninth Circuit Court of Appeals. *See infra.*

issued outside the time limits mandated by § 365(d)(1).

In a thoughtful and well-reasoned opinion, the Bankruptcy Court decided that it did have jurisdiction to extend the trustee's time for cause, even more than sixty days after the original order for relief. The court noted that the statute, as enacted, granted more judicial flexibility than the version originally proposed, which would not have allowed any extensions of time. 51 B.R. at 625 n. 1. More important,

> Reading Section 365(d)(1) to prohibit an extension of the original extension would lead to absurd results: A trustee making a good faith request for a brief extension would be punished if future events proved the extension too short. Accordingly, trustees would be encouraged to request the longest arguable period—and the statutory goal of prompt resolution of the status of executory contracts would suffer. Because any fixed period may prove too short, a prudent trustee would seek an extension "until further order of the court"—turning the statute inside-out and shifting the burden to act to the other executory contract parties.

*Id.* at 625–26; *see also Southwest Aircraft,* 831 F.2d 848, *supra.*

Appellee criticizes this logic, claiming that it would be inherently impossible for any court to find "cause" to grant an open-ended extension. Appellee's argument is not persuasive. It is easy to imagine a debtor, in all good faith, representing to the Bankruptcy Court that cause for an extension existed, but that it could not accurately predict how long the circumstances requiring the extension might endure, and therefore needed a lengthy or open-ended extension to protect itself from the very kind of ruling Rouse here seeks. Indeed, any time a separate litigation were part of the debtor's showing of "cause", this argument would command serious attention.[4]

■ This Court finds the reasoning of *Telemark* compelling, and its facts precisely analogous to the case before the Court. Congress cannot have intended, consistent with the overall statutory scheme of the Code, to force debtors to forfeit valuable leases if, for example, negotiations that a debtor thought could be concluded in 90 days end up taking 91. Authorizing a court to grant the original 30–day extension but not to respond to the need for an extra day makes no sense, and this court will not read the statute in a way that would produce such a plainly absurd result. In effect, the grant of an extension tolls the expiration of the sixty-day period until the end of the extension.[5] *See Musikahn, supra,* 57 B.R. at 942 n. 5. Thus, as long as a lease under § 365(d)(4) has not been deemed rejected by the lapse of sixty days or a period extended by the Court, the Bankruptcy Court may grant the debtor additional time to decide to assume or reject a lease if the Bankruptcy Court finds cause to do so. *Cf. In re Ro–An Food Enterprises, Ltd.,* 41 B.R. 416, 419–20 (E.D.N.Y.1984) (repeated adjournments during litigation of threshold question of lease validity constituted, in effect, extensions of time granted after the initial sixty days, and further extensions could be ordered); *In re Bygaph, Inc.,* 56 B.R. 596 (Bkrtcy.S.D.N.Y.1986) (state court judgment nullifying a lease tolled running of the initial sixty days, permitting debtor to assume lease when state court judgment

---

**4.** Appellee's other arguments against applying the reasoning of *Telemark* to this case are equally unpersuasive. Rouse claims that Tigr should have asserted the dispute that led to the state lawsuit in its first extension request, but § 365(d)(4) does not require that a debtor state all possible reasons for an extension. Rouse also asserts that *In re Ro–An Food Enterprises, Ltd.,* 41 B.R. 416, 419–20 (E.D.N.Y.1984), is contrary to *Telemark.* Appellee misreads *Ro–An* (*see infra*). Finally, appellee criticizes the *Telemark* court's reliance on § 105(a) of the Code;

this Court finds such reliance entirely appropriate. *See supra.*

**5.** Interestingly, the Bankruptcy Court in this case stayed the expiration of debtor's time to decide until this Court could hear and determine the appeal. It is difficult to discern, on a literal reading of the statute, where the Bankruptcy Court found legislative authority even for this quite proper "extension." Hewing to a severe and literal method of construction thus proved to be simply impractical, even for a court that attempted to do so.

was reversed). This holding effects Congress' stated intent to protect the lessor from undue uncertainty yet permit the debtor adequate time to decide as dictated by the circumstances of each case.[6]

Such further extensions, it should be needless to say, must not be granted as of course but only on a showing of cause similar to that which would have justified an original extension. In this case, appellee Rouse urgently argues that no further extension is justified, even if the court could grant one, because seventeen months have now elapsed since Tigr's initial bankruptcy petition. This logic, of course, misconstrues the cause which Tigr asserts—namely, the pending and still undecided state court lawsuit. However, this Court in its appellate capacity is precluded from determining the merits of Tigr's request for an extension. It holds only that the Bankruptcy Court has jurisdiction to grant such a request, and should take appropriate steps to determine whether good cause has been shown.

The court appreciates that Bankruptcy Judge Holland grappled with a difficult issue, and that he recognized that "the District [is] entitled to an appellate decision" of this issue. Transcript of Hearing, Oct. 14, 1986, at 17 (Ex. A to Record on Appeal). Nonetheless, for the reasons stated above, the decision of the Bankruptcy Court must be reversed and remanded for proceedings not inconsistent with this opinion. The Bankruptcy Court's order of October 24, 1986 is vacated, except that the stay of the expiration of the time within which the debtor must assume or reject the lease shall continue in effect, as previously modified by this Court, until the Bankruptcy Court decides whether cause has been shown for an extension of the debtor's time.

SO ORDERED.

6. Senator Hatch's comments on § 365(d)(4) suggest that the court was to have great discretion in balancing these interests: "If the lease is not assumed or rejected within this sixty-day period, or *any additional period* granted by the court, the lease is deemed rejected." 1984 U.S.Code Cong. & Ad.News 598 (emphasis added).