**In re VICTORIA STATION INC., a California corporation, and its subsidiaries, Debtor.**

**WILLAMETTE WATER FRONT, LTD., Appellant,**

v.

**VICTORIA STATION INC., Appellee.**

BAP Nos. NC 87–1324 MoMeAs, NC 87–1635 MoMeAs and NC 87–1660 MoMeAs.

Bankruptcy No. 3–86–01420–JR.

United States Bankruptcy
Appellate Panel
of the Ninth Circuit.

Argued and Submitted on Oct. 30, 1987.

Decided June 23, 1988.

232

John P. Bledsoe, Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland, Or., for appellant.

Richard Levin, Stutman, Treister & Glatt, Los Angeles, Cal., for appellee.

Before MOOREMAN, MEYERS and ASHLAND *, Bankruptcy Judges.

MOOREMAN, Bankruptcy Judge:

## OVERVIEW

By this appeal, appellant Willamette Waterfront (Willamette) seeks to set aside Victoria Station's (debtor) assumption and assignment of a lease. The fundamental dispute in this case is over the debtor's obtaining three (3) separate orders extending the time in which to assume or reject certain unexpired leases of nonresidential real property.

The first appeal arises from Judge Elizabeth L. Perris' order granting the debtor's second extension motion. Although the debtor's second motion was made within the time frame of the first extension, it was "outside" the statutory sixty (60) day time period set forth in 11 U.S.C. § 365(d)(4). The second appeal arises from Judge Thomas E. Carlson's order granting the debtor's third motion to extend the time to assume or reject the lease. As with the second extension, the debtor's third motion was also made within the time frame of the previous extension. Finally, the third notice of appeal arises from Judge Lloyd King's order approving the "Sale, Assumption, and Assignment" of the disputed lease. Because each of the above appeals involve essentially the same issue, the three were consolidated before this Panel.[1]

## FACTS

The debtor was the lessee under 72 leases of non-residential real property on which it operates restaurants throughout the country. The above leases included a lease between the debtor and Willamette. On May 20, 1986, the debtor filed a petition for reorganization under Chapter 11. Eight days later (May 28, 1986), the debtor filed a motion for an extension of the sixty (60) day period in which to assume or reject various leases (First Extension Motion). Notice of the debtor's motion, however, was not received by Willamette due to an incorrect address.[2] The initial motion

---

* Upon the death of Honorable Peter M. Elliott, the Clerk assigned Honorable Calvin K. Ashland to this Panel. Judge Ashland has reviewed the record and has determined that no further argument is needed.

1. The underlying bankruptcy case has also been the subject of a similar appeal involving § 365(d)(4), which was recently decided by the Ninth Circuit. *Turgeon v. Victoria Station Inc., (In re Victoria Station )*, 840 F.2d 682 (9th Cir. 1988) (affirming *In re Victoria Station,* 69 B.R.

110 (9th Cir. BAP 1986)). In that case, the Ninth Circuit affirmed the Bankruptcy Appellate Panel in holding that service by mail of a motion to assume a lease was timely even though the motion was not *filed* until after the last day of the § 365(d)(4) period. *Id.* at 604.

2. It is undisputed that although Willamette did not formally receive notice of the debtor's motion to extend, it did have actual notice of the bankruptcy and in fact filed a "Motion to Compel Adoption or Rejection of The Lease."

sought to extend the time period to assume or reject the leases until the confirmation of the plan. However, several landlords objected to such an "open ended" extension. Apparently, in order to avoid the uncertainty of an open ended extension, but recognizing that the debtor may need additional time to assume or reject the numerous leases, Judge Jack Rainville granted an extension to December 31, 1986, and stated that the extension was without prejudice to any party in interest requesting an additional extension or seeking a reduction of the period. Additionally, Judge Rainville's order required a status hearing every sixty (60) days. *Id.*

On November 24, 1986, the debtor filed its "Second Motion to Extend Time to Assume or Reject Leases" (Second Extension Motion). Again, however, Willamette received no notice of the debtor's motion and did not attend the subsequent hearing. At the hearing on the Second Extension Motion, several lessors objected on the basis that such an extension was prohibited by § 365(d)(4) of the Bankruptcy Code. Judge Perris, however, determined that a second extension was warranted and granted the debtor's motion extending the time period to March 31, 1987. As with the first extension, Judge Perris' order also contemplated additional extensions or reductions of the time period.

On December 29, 1986, five days after the extension order had been entered, Willamette discovered the existence of the order and subsequently brought a Motion to Vacate on the basis that it had not received proper notice and that an "ex parte" motion to extend the time to assume or reject a lease was not permitted. Judge Perris, partially relying on dicta in *In re Southwest Aircraft Services, Inc.*, 66 B.R. 121, 122 (9th Cir. BAP 1986), determined that a bankruptcy court has authority to grant a "short ex parte extension pending a hear-

ing" on Willamette's motion to compel assumption or rejection of the lease.[3] Accordingly, Willamette's motion to vacate was denied and a timely notice of appeal followed.

On February 27, 1987, one month prior to the running of the second extension, the debtor filed its third and last motion to extend the time to assume or reject the leases (Third Extension Motion). Willamette opposed the motion and again argued that granting a motion to extend made outside the initial sixty (60) day time period was not within the statutory authority of § 365(d)(4) or the power of the court. Additionally, Willamette asserted its previous contention that the Second Extension Motion was granted without proper notice and was therefore void. Judge Carlson overruled Willamette's objections and eventually an amended order was entered extending the period to assume or reject the leases until June 30, 1987. While this third extension order allowed any lessor to seek a reduction of the time period, it specifically provided no further extension would be allowed. From this order, Willamette again filed a timely notice of appeal.

On April 7, 1987, the debtor filed a notice of proposed sale of the leases which included a motion to assume and assign the subject leases. The motion proposed to sell the lease between the debtor and Willamette for $300,000. Willamette again objected to the assumption of the lease on the basis that the time period to assume had expired as a matter of law and additionally, objected to the assignment of the lease on the grounds that the assignee had not sufficiently established his financial condition. Judge Carlson again overruled Willamette's objection to the multiple extensions and determined that the assignee of the lease had adequately established his finan-

---

3. The transcript indicates that both parties and Judge Perris contemplated a hearing on the merits of continuing the extension, (i.e. "cause" under § 365(d)(4)). This hearing was to occur in relation to Willamette's previously filed motion to compel assumption or rejection of the lease. The record indicates that a hearing to address the merits of the continued extension was set for March 6, 1987. However, after the debtor had filed its opposition, Willamette withdrew the motion, apparently deciding to forego the merits of the extension, in favor of attacking on appeal the question of the court's authority for such an extension. Transcript, Appellee's E.R. at 186–97.

cial ability to assume the lease.[4] Willamette's third notice of appeal arises from this order.

## DISCUSSION

There are essentially three issues before this Panel which have arisen from the instant appeals. First, whether the appeals are moot under 11 U.S.C. § 363(m) because of the eventual assignment of the subject lease. Second, if the appeals are not moot, whether 11 U.S.C. § 365(d)(4) allows for multiple extensions of the time to assume a lease when the motion seeking an extension is filed outside the initial sixty (60) days contemplated by § 365(d)(4), but within the time frame of a previously granted extension. Finally, whether the lack of notice to Willamette violates due process thereby rendering the second extension void and thus preventing any subsequent assumption and assignment.

### I. *Mootness*

■ Initially the debtor argues that the instant appeal is moot under § 363(m) of the Bankruptcy Code because the assignee of the subject lease (Marlow), has taken possession of the premises and has renovated the property. Section 363(m) provides as follows:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). In the instant case, Willamette failed to move for a stay pending appeal.

**4.** Although the transcript of the hearing on the motion to assume and assign the lease indicates that the hearing was before Judge Carlson, the actual order authorizing the assumption and assignment was executed by Judge King.

**5.** The record indicates that because of the uncertainty this appeal would have on the assignment, Marlow required that the proposed assignment of the lease be reduced by $35,000.

The Ninth Circuit Court of Appeals has stated:

> when, in the absence of a stay of the order of sale, a sale to a 'good faith purchaser' has been concluded, an appellate court cannot undo the sale. Because the court cannot provide meaningful relief to the appellant in those circumstances, any appeal of the order of sale thereby becomes moot.

*Matter of Cada Investments, Inc.*, 664 F.2d 1158, 1160 (9th Cir.1981) (citations omitted). Under § 363(m), a reviewing Panel cannot affect the validity of an authorized sale to a *good faith purchaser*, when the sale has not been stayed. 11 U.S.C. § 363(m) (emphasis added). The Ninth Circuit has recently reiterated, "the primary goal of the mootness rule 'is to protect the interest of a good faith purchaser ... of the property,' thereby assuring finality of sales." *In re Onouli–Kona Land Co.*, 846 F.2d 1170 (9th Cir.1988) (citing *In re Suchy*, 786 F.2d 900, 901–02 (9th Cir.1985)).

Willamette argues that this appeal is not moot because the assignment of the lease to Marlow was expressly conditioned upon the outcome of this appeal.[5] In *Cada* the Ninth Circuit recognized that mootness principles may not apply when the third party's interest is "expressly conditioned" on the outcome of the appeal. 664 F.2d at 1160. Further, the recent considerations of the Ninth Circuit in *Kona* support a determination that the "policy of finality" will not be impinged by finding the mootness rule inapplicable in this case. *Kona*, slip op. at 4428.

Additionally, Marlow's absence does not prevent this Panel from granting effective relief. If the bankruptcy court is affirmed, Marlow will remain in possession of the lease pursuant to the assignment agree-

Willamette (the lessor) had agreed not to dispossess Marlow if the assignment was later reversed *if* Marlow would agree to pay a rental increase of $450 a month. The $35,000 figure amounts to the present value of the resulting increase in rent over the term of the lease in the event the debtor's assumption of the lease was reversed.

ment. If, on the other hand, the Panel reverses the bankruptcy court, Marlow will continue to remain in possession pursuant to the subsequent agreement with Willamette.[6] Under the facts of the instant case, the assignment of the lease clearly contemplated the effect of an appeal and specific allowances were made for such contingency. Marlow will not be prejudiced by the outcome of this appeal. Accordingly, the "mootness policy" of providing innocent parties with a final order on which they can rely is not applicable under the circumstances of this case.

## II. *Multiple Extensions*

Willamette argues that under the clear language of § 365(d)(4) any extensions granted after the sixty (60) period established by § 365(d)(4), are prohibited. Section 365(d)(4) provides in the pertinent part:

"... if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee *within 60 days* after the date of the order for relief, *or within such additional time as the court, for cause, within such 60 day period, fixes,* then such lease shall be deemed rejected...."

11 U.S.C. § 365(d)(4) (emphasis added). The issue before this Panel is whether § 365(d)(4) permits additional extensions so long as the previous valid extension had not expired.

In determining whether § 365(d)(4) allows for multiple extensions under the facts of the instant case, this Panel will consider established rules of statutory construction. The Supreme Court has stated:

"[t]he starting point in every case involving construction of a statute is the language itself." *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756 [95 S.Ct. 1917, 1935, 44 L.Ed.2d 539] (1975) (Powell, J. concurring). *See Rubin v. United States,* 449 U.S. 424

[101 S.Ct. 698, 66 L.Ed.2d 633] (1981). But ascertainment of the meaning apparent on the face of a single statute need not end the inquiry. *Train v. Colorado Public Interest Research Group,* 426 U.S. 1, 10 [96 S.Ct. 1938, 1942, 48 L.Ed.2d 434] (1976); *United States v. American Trucking Assns., Inc.,* 310 U.S. 534, 543–544 [60 S.Ct. 1059, 1063–1064, 84 L.Ed. 1345] (1940). This is because the plain-meaning rule is "rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists." *Boston Sand Co. v. United States,* 278 U.S. 41, 48 [49 S.Ct. 52, 53, 73 L.Ed. 170] (1928) (Holmes, J.). *The circumstances of the enactment of particular legislation may persuade a court that Congress did not intend words of common meaning to have their literal effect. E.g., Church of the Holy Trinity v. United States,* 143 U.S. 457, 459 [12 S.Ct. 511, 512, 36 L.Ed. 226] (1892); *United States v. Ryan,* 284 U.S. 167, 175 [52 S.Ct. 65, 68, 76 L.Ed. 224] (1931). *Watt v. Alaska,* 451 U.S. 259, 265–66 [101 S.Ct. 1673, 1677, 68 L.Ed.2d 80] (1981) (emphasis added). *See In re Southwest Aircraft Services, Inc.,* 831 F.2d 848, 849–50 (9th Cir.1987). As the Ninth Circuit recognized, "the meaning of the words of section 365(d)(4) is not entirely clear." *Southwest Aircraft,* 831 F.2d at 849–50.

Thus, we must turn to the circumstances of the enactment and the purpose of § 365(d)(4) in resolving the issue before this Panel. In the recent case of *Southwest Aircraft,* the Ninth Circuit summarized the legislative purpose behind § 365(d)(4) as follows:

[b]efore 1984, debtors in Chapter 11 reorganizations had no fixed deadline to assume or reject unexpired leases, although any party could request the court to fix a time limit. 11 U.S.C. § 365(d)(2)

---

**6.** Additionally, the purchase price will be returned to Marlow from funds held in escrow and from Willamette who received a portion of the proceeds in payment of "prepetition obligations." Appellant's Memorandum Supporting Disposition on Appeal at 4–5. Although, a reversal would result in an increase in the month-

ly rents, Marlow will not have been harmed because the assignment of the lease specifically contemplated the effect of a reversal on appeal and in consideration of this contingency, Marlow obtained a decrease in the purchase price of the lease.

(1983). Congress became concerned about the practical consequences of Chapter 11 filings by tenants of shopping centers. It was particularly concerned that mall operators were facing periods of extended vacancies, that would last until such time as bankruptcy courts would finally decide to take the initiative and force debtors to make a choice whether to assume or reject the leases. It was also concerned about the effects the extended vacancies were having on other tenants. *See* 130 Cong.Rec. S8891, S8894–95 (daily ed. June 29, 1984) (statement of Sen. Hatch), *reprinted in* 1984 U.S. Code Cong. & Admin. News 576, 590, 598–99.

To address this problem, Congress added two provisions dealing specifically with non-residential leases in Chapter 11 proceedings..... Subsection (d)(4) establishes the 60–day deadline for assumption or rejection, and imposes on the debtor the burden of petitioning the bankruptcy court for a change in the deadline.

*Southwest Aircraft*, 831 F.2d at 850–51 (emphasis added). Additionally, it is important to note that under the initial proposal of § 365(d)(4) the legislative history indicates that multiple extensions were contemplated.

The debtor should ... be able to make [the assumption or rejection] determination shortly after the petition is filed and certainly within 60 days in all but the most complicated cases. Nonetheless, the *court* has authority to grant *extensions* for cause.

S.Rep. No. 98–65, 98th Cong., 1st Sess. 27, 38 (1983) (emphasis added).

In recognition of the above legislative history and purpose behind § 365(d)(4) this Panel holds that the bankruptcy court did not err in granting the second and third

extensions even though these extensions were allowed outside the original 60–day time period set forth under § 365.

■ It is apparent from the record that the instant case involved numerous and complicated leases, the debtor continued to occupy the space and all post-petition lease obligations were satisfied. Under these circumstances it is undisputable that extensions were justified "for cause" under § 365(d)(4).[7] Further, Willamette never disputed that cause existed to extend the time period and in fact withdrew its own motion in which it had the opportunity to dispute the second extension on the merits. If cause existed at the time of the first extension, thereby justifying an extension, it is illogical that no further extensions could be obtained even though sufficient cause still existed at the time a subsequent motion is made.

■ So long as, 1—the initial motion to extend is brought within the 60–day period, 2—the period of extension has not passed and 3—"cause" for an extension exists, multiple extensions may be granted. *See Tigr Restaurant v. Rouse S.I. Shopping Center*, 79 B.R. 954, 959–60 (E.D.N.Y. 1987). There is nothing in the legislative history to support the argument that all motions to extend must be sought within the 60–day period. The very fact that the bankruptcy court is given complete discretion on the length of any extension evidences the fact that the 60–day time frame is not an absolute period. *See Id.*, at 957.

■ In the instant case, the bankruptcy court's initial extension order contemplated future extensions and so long as cause continued to exist (which Willamette does not dispute), it was clearly within the court's discretion to grant one long extension, rather than requiring the debtor to

---

**7.** As set forth in *In re Wedtech Corporation*, 72 B.R. 464, 471–73 (Bankr.S.D.N.Y.1987), there are numerous important factors in support of and against an extension of time under § 365(d)(4). *See also Theatre Holding Corp. v. Mauro*, 681 F.2d 102 (2d Cir.1982). These factors include, whether the leases are the primary assets of the debtor, whether the lessor continues to receive rental payments, and whether the case is exceptionally complex and involves a large number of leases. *Id.* Additionally, the legislative history reflects that another factor is whether the property remains vacant thereby affecting neighboring tenants. In the instant case, the record reflects that consideration of the above factors support the bankruptcy court's orders of extension.

seek several short extensions. There is little difference between a 120–day extension, and two 60–day extensions. Indeed the latter scenario is preferable because it requires the debtor to establish cause for any additional extensions and allows the bankruptcy court to insure the protection of lessors, which is the clear legislative purpose of § 365(d)(4). Additionally, the bankruptcy court's extension orders in the instant case, insured the continued protection of Willamette by specifically allowing any party in interest to seek a reduction in the time period and additionally required that status hearings be had every 60 days.[8]

As previously set forth, the legislative purpose behind § 365(d)(4) was to protect lessors from extended periods where the premises remained vacant and no rental payments made. In the instant case, the above concerns did not exist and the bankruptcy court found cause to allow an extension. On the basis that cause continued to exist, the court allowed additional extensions when the motion was timely brought within the period of the previous extension. This in no way violated the legislative purpose and indeed afforded greater protection to Willamette than if the bankruptcy court would have initially granted an extension for an indefinite or greater period of time.[9]

### III. *Notice*

Willamette also argues that even if multiple extensions are proper, in the instant case, the second order of extension was obtained without proper notice being afforded to Willamette. Accordingly, Willamette argues that the second extension was void as to it and the lease automatically expired at the end of the initial extension. The debtor, on the other hand, argues that nothing in the Bankruptcy Code or the Bankruptcy Rules expressly require that an extension of time under § 365(d)(4), be obtained after notice to the lessor.

Although the debtor is correct that § 365(d)(4) does not contain the language requiring a "notice and a hearing," this fact is not dispositive of the issue before this Panel. Additionally, there is no authority for Willamette's proposition that a motion seeking an extension of time within which to assume or reject a lease is a "contested matter" under Bankruptcy Rule 9014. Finally, Willamette's argument that due process was violated by the issuance of the extension order without proper notice, is questionable under the circumstances of this case. It is unclear whether a lessor can assert a due process argument when a bankruptcy court grants an *extension* to the debtor/tenant in order to assume or reject a lease. *Texas & N.O.R. Co. v. Phillips*, 196 F.2d 692, 694 (5th Cir.1952) (rejecting the appellant's argument that failure to give formal notice invalidated an extension to assume a lease on the basis that "[s]uch an order is one entered in the

---

8. In support of this Panel's determination, one commentator has stated, "[i]f the court grants a substantial extension of time under section 365(d)(4), likely in many cases since no further extension may be available outside the 60–day period, then the lessor may have no right to seek a subsequent order forcing the trustee to elect even when circumstances have changed.... A solution to this excessive rigidity in the statute, perhaps resulting from a drafting oversight, would be a determination that additional extensions could be sought outside the sixty-day period coupled with a provision in the extension order providing that it will be subject to reconsideration or modification upon an appropriate showing of cause. Another option would be to grant an open-ended extension within the sixty-day period and to provide in the order that the lease will be terminated as to a specific party in interest upon a showing of cause." L. King, *Collier on Bankruptcy*, 365.02[2] at 365–31 (15th ed. 1987 rev.).

9. This Panel's allowance of multiple extensions under § 365(d)(4), so long as cause exists and the motion is brought prior to the lapse of the previous extension, is also supported by several courts' allowance of multiple enlargements of a debtor's exclusive period to file a Chapter 11 plan under § 1121(d). *E.g. In re Perkins*, 71 B.R. 294, 296–300 (W.D.Tenn.1987); *In re Pine Run Trust, Inc.*, 67 B.R. 432 (Bankr.E.D.Pa. 1986). In the instant case, Willamette essentially makes the identical argument as that presented to the District Court in *Perkins*. In rejecting the appellant's argument in that case, the District Court stated, "it is not logical to require that the bankruptcy judge make any enlargement decision based only on the facts available to him during the initial 120–day or 180–day period; it would be unfair to expect such prescience." *Perkins*, 71 B.R. at 297.

*routine administration of the estate.* It may, in the discretion of the [court], be entered *with or without notice,* and there was therefore no necessity for giving notice of the request." (emphasis added)). *But see In re Alba Press, Inc.,* 55 B.R. 127, 129 (Bankr.S.D.Fla.1985) (recognizing without discussion that an extension of time "involves a substantial right of the landlord...."). Whether such an extension involves a substantive right is even more doubtful where, as in this case, the property is not vacant and the rental obligations are satisfied.

■ This Panel, however, need not finally dispose of the above issues in this case. It is undisputed that Willamette received notice of the second order of extension prior to the lapse of the debtor's initial extension time period. Thus, Willamette cannot argue that it was prejudiced by any failure to receive notice of the Second Motion to Extend. Additionally, the bankruptcy court determined that sufficient cause existed to warrant "a short ex parte extension of time within which to assume or reject a lease pending a hearing on the matter." In this regard, the bankruptcy court set a hearing for March 6, 1987, in which the court stated it would address the issue of "cause" for the extension with specific regard to Willamette's objection. Thus, Willamette clearly had notice of and an opportunity for a hearing on the specific subject Willamette now asserts was unavailable. Willamette, however, chose not to dispute the existence of "cause" for the extension and withdrew its motion.

Willamette argues that there was no showing of "compelling need" thereby justifying the bankruptcy court's ex parte extension. However, nothing in the record supports the argument that the bankruptcy court abused its discretion in allowing the ex parte extension. It is clear that Willamette's failure to receive notice was not due to any intentional purpose on the part of the debtor. Also, it appears from the record that the leases constituted a substantial asset of the debtor. Finally, Willamette did receive notice of the extension order prior to the lapse of the previously

granted extension. Under the circumstances of the instant case, this Panel is without a "definite and firm conviction that the court below committed a clear error of judgment" in granting the debtor a short ex parte extension and allowing Willamette the opportunity to attack the extension on the merits. *See Mission Indians v. American Management & Amusement, Inc.,* 824 F.2d 710, 724 (9th Cir.1987)).

Finally, this Panel finds further support for upholding the orders below on the basis that bankruptcy courts as courts of equity "are compelled to disfavor a lease forfeiture that would imperil the debtor's reorganization and impede rehabilitative goals." *In re Victoria Station Inc.,* 840 F.2d at 684 (citing *In re Musikahn,* 57 B.R. 938, 939 (Bankr.E.D.N.Y.1986)).

Based on the foregoing, the orders of the bankruptcy court below are AFFIRMED.