In re PROGRESSIVE RESTAURANT
SYSTEMS, INC., Debtor.

In re James Thomas FENTRESS and
Sandra Ruth Fentress, Debtors.

Bankruptcy Nos. 95–14370 K, 95–14371 K.

United States Bankruptcy Court,
W.D. New York.

Feb. 25, 1997.

Raymond L. Fink, Harter, Secrest & Emery, Buffalo, NY, for Wendy's Old Fashioned Hamburgers of New York, Inc.

Stephen A. Donato, Camille W. Hill, Hancock & Estabrook, L.L.P., Syracuse, NY, for Debtors.

### MEMORANDUM OF CERTAIN PORTIONS OF A DECISION ENTERED ON FEBRUARY 7, 1997

MICHAEL J. KAPLAN, Chief Judge.

There are several issues presented by the present motion. The motion is filed by Wendy's Old Fashioned Hamburgers of New York, Inc. ("Wendy's"), and seeks "Surrender of Non–Residential Real Property and Relief from Automatic Stay pursuant to 11 U.S.C. § 365(d)(4) and 11 U.S.C. § 362." The motion concerns four stores that the Chapter 11 Debtors lease from Wendy's. (The Debtor leases nine other stores from other landlords.) The thrust of the motion is that 11 U.S.C. § 365(d)(4) gives Chapter 11

debtors only 60 days, or such further time as the Court directs, in which to assume such leases, and if a debtor fails to do so within the time allowed, then the leases are deemed rejected and the debtor must surrender the properties to the landlord.

Progressive Restaurant Systems, Inc. ("Progressive") and James Fentress ("Fentress") (together referred to as the "Debtors") were co-tenants on the Wendy's leases. Wendy's argues that no extensions of time to assume or reject were ever granted in the Fentress case and that every extension of time granted in the Progressive case has expired, and that it is, consequently, too late for the Debtors to make any proposals for the assumption of leases over the objection of Wendy's. Further, Wendy's demands surrender of the premises, and seeks relief from the stay to whatever extent is necessary to permit Wendy's to enforce its rights.

The issues presented are these:

1. Clearly, the leases have been "deemed rejected" under 11 U.S.C. § 365(d)(4) as to Fentress. What is the effect of that fact on the present motion as it relates to Progressive?

2. What is the effect of this Court's June 25, 1996 Order upon the operation of 11 U.S.C. § 365(d)(4), such Order having provided that Progressive could, instead of making a motion to assume or reject under Bankruptcy Rule 6006, file a Plan of Reorganization providing for assumption or rejection pursuant to 11 U.S.C. § 1123(b)(2)?

3. Assuming that the time provisions of 11 U.S.C. § 365(d)(4) continued in effect after Progressive elected to address the assumption of the leases by means of a plan, rather than by motion, what was the effect upon those time provisions, of this Court's Order of September 27, 1996? That Order, which incorporated an August 7, 1996 ruling of the Court declaring that Progressive's proposals for assumption of leases could not be approved as a matter of law, sustained various landlords' objections to the Disclosure Statement on those grounds, but provided that that ruling was "without prejudice" to Progressive's filing of an amended plan and disclosure statement that might propose terms that would be confirmable under law.

4. If 11 U.S.C. § 365(d)(4) governs and if the time to assume the leases has expired, has Wendy's waived the right to the remedies provided therein?

5. Does the fact that the Progressive has consistently indicated its intent to assume satisfy the statute?

6. If 11 U.S.C. § 365(d)(4) applies, and the time for assumption thereunder has expired, should the Court declare the time to be extended *nunc pro tunc,* or, in the alternative, should it extend the time retroactively for "excusable neglect" under Bankruptcy Rule 9006(b)(1) or provide some other form of relief for the Debtors?

The Court will address only issues 1, 2, 4 and 5 here. Questions 3 and 6 are the subject of a separate unpublished decision.[1]

The facts and procedural posture as recited by the Debtor are as follows:

### FACTS

On December 15, 1995 ("Petition Date"), the Debtors filed separate voluntary petitions for relief pursuant to Chapter 11, Title 11 USC. Since the Petition Date, the Debtors have remained in possession of their respective assets, including leases of real property, as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108. Progressive is the owner and operator of thirteen (13) Wendy's Old Fashioned Hamburger restaurant franchises throughout Western New York. James Fentress and Sandra Fentress are the Chief Executive Officer and President respectively, of Progressive

Wendy's is the lessor of four restaurant locations operated by Progressive. Each location is the subject of a separate Lease Agreement executed by and between the Debtors and Wendy's. The locations leased by the Debtors from Wendy's include: 1051 Main Street, Buffalo, New York ("Main Street"), 10350 Bennett Road, Fredonia, New York ("Bennett Road"), 3180 Niagara Falls Boulevard, Amherst,

---

**1.** *In re Progressive Restaurant Systems, Inc.,* Case No. 95–14370 (Bankr.W.D.N.Y. Feb. 7, 1997).

New York ("Niagara Falls Blvd.") and 6020 Porter Road, Niagara Falls, New York ("Porter Road") (collectively, the "Leases").

As of the Petition Date, the Debtors were in arrears for monthly rental payments and taxes due under the Main Street and Fredonia Leases in the total sum of approximately $67,000.00. All payments due under the Niagara Falls Boulevard and Porter Road Leases were current as of the Petition Date.

On February 8, 1996, and within sixty (60) days of the Petition Date, Progressive filed a motion pursuant to 11 U.S.C. § 365(d)(4) seeking an Order extending its time until April 13, 1996 to either assume or reject fifteen (15) leases of non-residential real property, including the subject Leases. The Court later entered an Order dated April 2, 1996 directing the Debtors to assume or reject all leases of non-residential real property by April 10, 1996.

On February 22, 1996, the Court approved a Stipulation entered into by the Debtors and Wendy's pursuant to which the Debtors are required to make post-petition rental and franchise royalty fee payments to Wendy's. In addition, the Debtors remain responsible for the payment of all real property taxes, water charges and other levies due in connection with the Leases. The Debtors have remained current on all rental payments, taxes and other charges due under the Leases during the thirteen (13) months since the Petition Date. The Stipulation also required the Debtors to assume or reject the executory franchise agreements and Leases with Wendy's by April 14, 1996.

On April 9, 1996, Progressive filed a motion seeking to assume eight (8) executory leases of non-residential real property and seeking additional time to assume or reject seven (7) remaining real property leases (the "Assumption Motion"). The Leases entered into with Wendy's were identified in this Motion as four of the eight Leases to be assumed by Progressive.

On June 25, 1996, the Court entered an Order in connection with the Assumption Motion extending "the Debtors' time to make its determination whether to assume, reject or to seek further time to make such determination concerning all unexpired commercial leases, either by filing a motion or by filing a Chapter 11 Plan of Reorganization seeking the above relief." The Order further provided that "if the Debtor files a Chapter 11 Plan seeking to assume or reject all of its commercial leases on or before June 28, 1996, the Debtor's prior motion seeking to assume eight leases of non-residential real property will be deemed moot as the Debtor's Plan shall address the assumption or rejection of those non-residential leases." The Debtors filed their respective Chapter 11 Plans and Disclosure Statements on June 28, 1996 which identified the leases of non-residential real property to be assumed pursuant to 11 U.S.C. § 365. All four of the Wendy's Leases were identified in the respective Plan and Disclosure Statements.

By Order dated August 19, 1996, the Court sustained objections filed by various lessors, including Wendy's concerning the Debtors' proposed cure of the pre-petition arrears and declined to approve the Disclosure Statements. The Debtors thereafter filed respective Amended Disclosure Statements on September 6, 1996. On September 27, 1996, the Court entered Orders again sustaining the lessors' objections and denying approval of the Amended Disclosure Statement. The Orders issued, however, were "*without prejudice* to the submission and filing of a further amended Disclosure Statement and Plan." (emphasis added).

On January 3, 1997, the Debtors filed their respective Second Amended Chapter 11 Plans and Second Amended Disclosure Statements which provide for the payment in full of pre-petition arrears accrued under leases of non-residential real property, including the Leases, over a twenty-four (24) month period, with interest at a rate of six percent (6%) per annum. Progressive shall also cure the pre-petition arrears owed to Wendy's under the thirteen executory franchise agreements in full, with in-

terest at nine-percent (9%), in accordance with the terms of the pre-petition promissory notes executed by the Debtors and Wendy's, and pay Wendy's the interest, over a period of twenty-four (24) months, that has accrued post-petition with regard to the sums due under the promissory notes.

Debtors' Mem.Opp'n at 2–5.

(1) *What is the effect of the fact that no extension of time was sought in the case concerning James Fentress individually?* It does not make a great deal of sense to argue about the effect of § 365(d)(4) in the Fentress case in light of the fact that whatever right Wendy's would enjoy to demand "surrender" from Fentress would be subject to the automatic stay in the corporate case. Fentress does not dispute that he has a personal obligation to Wendy's separate and apart from Progressive, for which provision must be made in his Chapter 11 reorganization plan. The true issue at Bar is whether Progressive will be permitted to cure defaults in the leases and reinstate the lease terms as part of its reorganization effort. If, as a matter of fact or law, that is not permissible or is not possible, then there is no need to discuss the interplay between the two cases in connection with the operation of 11 U.S.C. § 365(d)(4). Therefore, the Court will move on to consider the issues affecting the corporate case.

■ (2) *What is the effect of this Court's Order of June 25, 1996, declaring "that if the Debtor files a Chapter 11 Plan seeking to assume or reject all of its commercial leases on or before June 28, 1996, the Debtor's prior motion seeking to assume eight leases of non-residential real property will be deemed moot as the Debtor's Plan shall address assumption or rejection of those non-residential leases, ..." with respect to the operation of 11 U.S.C. § 365(d)(4)?* The answer is provided by the statute. 11 U.S.C. § 1123(b)(2) permits a debtor to avoid the need to make a specific motion to assume or reject an executory contract, instead permitting the debtor to include a provision for assumption or rejection of an executory contract in a plan of reorganization. But the statute specifically says that any such provision is "subject to section 365." It is the view of this Court, therefore, that this Court's Order did nothing more than it purported to do; to wit, to declare the then pending motions moot if a plan were to be filed. By express provision of the statute, § 365 continued to apply to any plan provisions dealing with assumption or rejection of the contracts, and therefore the time limitations of § 365(d)(4) and the remedy provisions thereof, continued to apply despite the change in procedural posture.

The Court rejects the assertion in the Debtors' Memorandum of Law that states that "By the June 25, 1996 Order, ... the Court effectively substituted [a] new procedure for the procedure set forth in § 365(d)(4)." (Debtors' Mem.Opp'n at 7).

Issue #3 is addressed in a separate unpublished decision.[2]

■ (4) *Did Wendy's waive its right to the remedies provided under 11 U.S.C. § 365(d)(4)?* Although the case authorities on each side of the question of waiver are informative and interesting,[3] they are, as Wendy's points out, irrelevant. Wendy's Reply to Debtors' Opposition points out that,

Progressive's payment of postpetition rents occurred within and pursuant to an Order of this Court, granting Wendy's adequate protection and related relief, which Order was dated February 22, 1996....

The second last [sic] decretal paragraph stated that the provisions of the Order, which in part required Progressive to timely pay rent in accordance with the Wendy's Leases, did not prevent or prohibit Wendy's from seeking further relief from the automatic stay or other appropriate remedies based upon the occurrence or

---

2. *See supra* note 1.

3. *Compare, e.g., Bethesda–Union Society v. Austin (In re Austin),* 102 B.R. 897 (Bankr.S.D.Ga.1989) (finding waiver of lessor's § 365(d)(4) rights), *and In re T.F.P. Resources, Inc.,* 56 B.R. 112 (Bankr.S.D.N.Y.1985) (same), *with In re Dial–A–Tire,* 78 B.R. 13 (Bankr.W.D.N.Y.1987) (lessor's acceptance of rents does not constitute waiver of § 365(d)(4) rights), *and In re Re–Trac Corp.,* 59 B.R. 251 (Bankr.D.Minn.1986) (same).

existence of circumstances justifying the same.

Wendy's Reply to Opp'n ¶ 10–11.

Whether a landlord may waive, or be estopped from asserting, the rights and remedies contained in 11 U.S.C. § 365(d)(4) by actions consistent with a supposition that the leases are still in place and either have been assumed or will be assumed, is an entirely different question from that presented here. Here we have a landlord who, within the first few weeks of the Chapter 11 case, bargained for and obtained from Progressive a stipulation that the Debtor would do many specified things including the payment of rent, and which stipulation expressly preserved to Wendy's the right to seek further relief and remedies based upon "the occurrence or existence of circumstances justifying the same." The present Court considers Wendy's conduct, consistent with the bargained-for exchange contained in the stipulation, to be categorically different than the kinds of conduct that a few courts have found to constitute a "waiver" of the remedies contained in § 365(d)(4), as cited in the Debtors' Memorandum of Law. The Court will leave to another day the possibility that the kinds of considerations expressed by the court in the case of *In re Lew Mark Cleaners Corp.*, 86 B.R. 331 (Bankr.E.D.N.Y.1988), might cause the Court to conclude that certain rights bargained for in a stipulation were subsequently waived by conduct. Clearly, Wendy's has not waived the rights bargained for by the stipulation here. The Court holds categorically, as indicated above, that the stipulation placed this case outside the reach of any rationale for declaring a waiver of the landlord's § 365(d)(4) rights.

■ 5. *Does Progressive's consistent posture toward assumption satisfy the § 365(d)(4) requirement?* Although there is authority to the contrary,[4] many cases hold that assumption is a two step process—(1) a stated intent to assume, and (2) court approval thereof—and that only the first step

needs to be completed within the time specified by § 365(d)(4).[5]

I have no doubt that in an appropriate case, the Court might be persuaded to deem the § 365(d)(4) limitation satisfied where a motion to assume is pending before the Court, and where there is either no objection thereto or where a debtor's proposal is both clearly within the bounds of the law and within the bounds of the debtor's ability to perform. Probably a debtor's estate ought not to suffer for the Court's inability to promptly act on the motion.

But the legislative intent behind § 365(d)(4), as illuminated by the cases on this issue, did not, in my view, extend only to getting the debtor or trustee to promptly make a decision. The intent was to limit uncertainty regarding whether stores, etc. would be vacant (principally whether vacant stores in shopping centers would remain vacant).[6]

The legislative history clearly presumes that the hypothetical debtor has the wherewithal to obtain an order overruling the landlord's objection to assumption, and that, consequently, the critical matter that needs attention is getting the debtor to make a decision one way or the other.

Here, Progressive has spent the better part of a year unsuccessfully trying to get the Court to accept innovative arguments as to why various landlords' objections to the proposed assumption should be overruled. The argument that a five-year cure provision is "prompt cure" was rejected here in August. The argument that Progressive could assume the Wendy's leases without curing the other defaults under a certain "Restructure Agreement" which integrated those leases and various other obligations was rejected here in October. Only after the December 12, 1996 filing of Wendy's present Motion did the Debtors state their intention to offer cure terms that complied with these decisions (assuming they do). And even as of this moment it is not known whether the

---

**4.** *See, e.g., In re Horwitz,* 167 B.R. 237 (Bankr. W.D.Okla.1994).

**5.** *See, e.g., Turgeon v. Victoria Station, Inc. (In re Victoria Station, Inc.),* 840 F.2d 682 (9th Cir.

1988); *Tigr Restaurant, Inc. v. Rouse S.I. Shopping Ctr.,* 79 B.R. 954 (E.D.N.Y.1987).

**6.** *See* 130 Cong.Rec. S8894 (daily ed. June 29, 1984) (statement of Sen. Hatch).

Debtors have the means to complete their present intentions.

Under the circumstances, the § 365(d)(4) time limitation is not satisfied merely by Progressive's consistently endeavoring to find some terms upon which it hoped eventually to persuade the Court, on the third or fourth try, that the objections could be overruled. The Court so rules.

If one intends to stray from "mainstream" assumption terms and engage in creative efforts, the failure to make certain that the § 365(d)(4) time has been or will be extended to cover the time necessary to pursue those efforts raises grave peril.

Issue # 6 is addressed in a separate unpublished decision.[7]

## CONCLUSION

The issues addressed above are resolved in Wendy's favor. The remaining issues are the subject of a separate order.[8]

